# HENRY COUNTY, Appellant, v. CITIZENS BANK OF WINDSOR.

### In Banc, December 24, 1907.

1. **PLEADING: Recovery.** A plaintiff cannot sue upon one cause of action and recover upon another. Recovery is always dependent on the cause of action stated in the petition.

2. ———: ———: **County Depositary: Undisclosed Principal.** The petition charged that all the banks of the county entered into an agreement by which one of them was to be the highest bidder for the county funds and was to be its depositary, and that it was to turn over to defendant bank ten thousand dollars of the money deposited with it by the county, that such agreement was carried out and such other bank was the highest bidder and became the county depositary and as such received its funds, and that it turned over to defendant $10,000 of the money so received, and the county sues for a recovery of that sum, the designated depositary being entirely insolvent. *Held*, that the county cannot recover on the theory that defendant was an undisclosed principal, for the cause of action stated in the petition does not proceed upon that theory, nor does it seek a recovery on the ground that there was a contractual relation, either expressed or implied, disclosed or undisclosed, existing between the county and defendant.

3. **UNDISCLOSED PRINCIPAL: County Depositary: Agreement Among Bidders.** There can be no undisclosed principal among the bidders for the county funds. The law requires the names of all bidding banks, together with the bid of each, to be entered upon the records of the court, and that one to be selected which is the highest bidder. And if, by reason of an agreement among all the banks of the county, one of them was to be and was the highest bidder, and that agreement further provided that it would turn over to the defendant a designated portion of the county's moneys deposited with it, and that agreement was carried out, defendant was not an undisclosed principal in the agreement entered into between the county and the bank accepted as depositary. There can be no such thing as a joint bid of two or more banks for the county funds; consequently, defendant was neither a disclosed nor an undisclosed principal to the county's agreement.

4. **TORTFEASORS: County Depositary: Agreement to Suppress Bids.** In an action to recover a particular fund belonging to

208 Sup—14

the county which is alleged to be in the possession of the defendant bank, the county cannot recover on the theory that defendant and the depositary were joint tortfeasors, in that they entered into an unlawful agreement by which the successful depositary was to be the highest bidder and portions of the county funds when deposited with it were to be turned over to defendant. To hold them as tortfeasors, the suit must be for damages.

5. **COUNTY FUNDS: Recovery: From Bank Receiving Interest Thereon: Constructive Deposit.** In pursuance to a secret agreement between the banks of a county that one of them would be the highest bidder for the county funds and when receiving them would turn over designated sums to the others, the said bank became county depositary, gave bond, and subsequently the agreement was so modified that the depositary kept the money but paid defendant bank four per cent interest on its share, under this written agreement: "Whereas, the Citizens Bank of Windsor is entitled to $10,000 of the county funds of Henry County for the year ending July 1, 1905, and whereas said bank has agreed that we may retain their said share of said funds during the time mentioned above: now, therefore, in consideration of said agreement on the part of said bank, we hereby agree to pay it the sum of $400 July 1, 1905, and we also agree to pay the interest due the county on said funds." The county sues the Citizens Bank to recover said $10,000, the depositary being wholly insolvent. No note or bond was executed by defendant to the depositary evidencing a loan, nor was any entry of the transaction made on the books of either bank. *Held*, first, that there was no authority by which the depositary or defendant could vary the terms of the contract with the county, or render any person other than the depositary and its bondsmen liable for any breach thereof; *second*, there was no contractual relation, express or implied, between the county and defendant; *third*, there were none of the essential elements of a loan between the depositary and defendant; *fourth*, the agreement between the depositary and defendant was at most one by the depositary to pay defendant $400 annually; *fifth*, neither by construction nor otherwise did the depositary deposit $10,000 of the county funds in defendant's bank, nor did it ever come into possession of the same although it received the interest; and, *sixth*, the county cannot recover from defendant as for money had and received.

Appeal from Pettis Circuit Court.—*Hon. Louis Hoffman*, Judge.

AFFIRMED.

*J. D. Lindsay, C. C. Dickinson & Son* and *Parks & Son* for appellant.

(1) (a) It is a uniform, inflexible rule of law that all combinations, the effect of which is to stifle competition in bidding at public or private sales or in the letting of public works, and on principle, in the letting for hire of public moneys, are immoral, vicious and void. In re Salmon, 145 Fed. 652. (b) A combination of bidders to suppress competition at a public sale required by law is a fraudulent conspiracy in restraint of trade and contrary to public policy. It renders void any contract or transaction of the vendor and vests in him the legal right to recover of any of the conspirators the value of all the benefits he has received thereunder. In re Blake, 150 Fed. 282. (c) "The principle is indubitable that whoever knowingly receives money, property or benefit from another through the fraud of a third is liable to restore it or its value. . . . By so much more is he liable when he participates in the perpetration of the fraud itself." In re Blake, 150 Fed. 282. (d) A principal may be charged with liability on a contract made in his behalf, although his interest be not disclosed, or known at the time, to the other contracting party. Weber v. Collins, 139 Mo. 501; Nichols, Shepard & Co. v. Kern, 32 Mo. App. 1; Higgins v. Dellinger, 22 Mo. 397; Briggs v. Munchon, 56 Mo. 473; Bank v. Jennings, 18 Mo. App. 651; Story on Agency, sec. 270; Wharton on Agency, secs. 403, 404; In re Salmon, 145 Fed. 650; In re Blake, 150 Fed. 279. (e) A party who is compelled to pay a note, which he signed as security for another, who gave it for money borrowed by him as agent for a third party, may recover the amount directly from him for whom the money was borrowed; and it makes no difference that the agent did not dis-

close his agency, or that the money was loaned and the note signed by security upon his individual credit. Higgins v. Dellinger, 22 Mo. 397; Mantz v. Maguire, 52 Mo. App. 149. (2) (a) An actual transfer of the money in a sack from Salmon & Salmon to the Windsor banks is not necessary. The court will, as a matter of law from the transaction itself, conclusively presume such transfer. Henry County v. Salmon, 201 Mo. 136. (b) Where parties to a transaction themselves agree upon their own construction, the court, in construing the same, will generally adopt the construction given by the parties. St. Joe, etc., Co. v. Railroad, 131 Mo. 291; St. Louis v. Gas Light Co., 155 Mo. 1; Rose v. Eclipse, etc., Co., 60 Mo. App. 28; Williams v. Railroad, 85 Mo. App. 103. (3) (a) A bank receiving the benefit of a contract can not set up the plea of *ultra vires*. Morse on Banks and Banking (3 Ed.), sec. 750. (b) Where a bank receives the proceeds and profits of a transaction, accomplished by means of fraudulent or improper acts on part of its officers, it cannot escape liability upon the ground that the acts of the officers were individual acts and that the thing done was not within the scope of its power. Carr v. Nat'l Bank & Loan Co., 167 N. Y., 375; Aldrich v. Chemical Nat'l Bank, 176 U. S. 618; First National Bank v. Greenville Oil & Cotton Co., 66 S. W. 828; American Nat'l Bank v. Nat'l Wall Paper Co., 77 Fed. 85; German Nat'l Bank v. Louisville Butchers, etc., Co., 20 S. W. 882. (c) The doctrine of *ultra vires* applies to the other party who is *in pari delicto*, but does not apply to the party wronged who is guilty of no wrong, negligence or laches. Morse on Banks & Banking, sec. 733. (d) A corporation cannot avail itself of the defense of *ultra vires* when the contract has been executed by the other party and is not expressly prohibited by law. City of Goodland v. Bank, 74 Mo. App. 365; Croham v. Brown, 68 Mo. App. 636; Winscott v. Investment

Co., 63 Mo. App. 367; St. Louis Drug Co. v. Robinson, 81 Mo. 18; Thornton v. Nat'l Exchange Bank, 71 Mo. 221; Roselle v. Buckmeir, 134 Mo. 380; Roselle v. Farmers Bank, 141 Mo. 36. .

*W. M. Williams* for respondent.

(1)  The defendants did not receive any of the county funds from the depositary of Henry county, and no part of the county money was on deposit in either of these banks at the time of the failure of Salmon & Salmon, or at the institution of this suit. (2)  The agreement by Salmon & Salmon, after their selection as the county depositary, with the defendant banks, cannot be construed as an actual deposit of $10,000 with the Citizens Bank of Windsor and $5,000 with the Farmers Bank of Windsor, and a re-loan of these sums, respectively, by said banks to Salmon & Salmon.  There was never any contract or understanding that Salmon & Salmon were to repay these amounts to the Windsor banks, and no intention that they should do so.  "A loan of money is a contract by which one delivers a sum of money to another and the latter agrees to return, at a future time, a sum equivalent to that which he borrowed."  Allibone v. Ames, 33 L. R. A. 587.  (3)  Salmon & Salmon promised to keep on time deposit, during the period for which they should be county depositary, the sum of $10,000 with one of the defendants and $5,000 with the other defendant; and the defendants were to pay interest on the daily balances at the same rate as Salmon & Salmon should pay to the county.  Subsequently this agreement was rescinded and "instead of paying the money over to them," Salmon & Salmon "retained the money and paid a bonus."  There was no money in the possession of the defendants belonging to the county at the time these suits were brought.  The plaintiff has failed to bring itself within the rule laid

down in In re Salmon, 145 Fed. 649, and In re Blake, 150 Fed. 275. (4) The suits are to recover money of the county, alleged to have come into the hands of the defendants, through a wrongful and unlawful combination to depress bidding at the time of the selection of the county depositary. The plaintiff must stand or fall on the case made in its pleadings. It cannot sue upon one cause of action and recover upon another. The petitions do not seek to charge the defendants as undisclosed principals in a contract with the county, and no recovery can be had upon that ground. Sumner v. Rogers, 90 Mo. 324; Traber v. Hicks, 131 Mo. 180; Carson v. Cummings, 69 Mo. 325; Ross v. Mather, 51 N. Y. 108. (5) Defendants cannot be held liable in this action on the ground that they authorized Salmon '& Salmon to bid for them for a part of the county funds. (a) Henry county could not have received or accepted a bid from the Farmers Bank for $5,000 or from the Citizens Bank for $10,000 of said funds. The depositary law does not authorize any such division. Separate bids cannot be accepted for portions of the county money. The county court is only authorized to select one depositary, and all the money of the county must be kept with such depositary. R. S. 1899, secs. 6817-6821. (b) Again, no such case is presented by the pleadings. The suit is for the recovery of specific money charged to have been obtained from the county through an alleged fraud and wrongful combination. A recovery cannot be had upon a contract. Sumner v. Rogers, 90 Mo. 324; Carson v. Cummings, 69 Mo. 325. (6) The Citizens Bank of Clinton, the Citizens Bank of Windsor and the Farmers Bank of Windsor are banking corporations, created under the statutes of this State. It is settled law that these corporations could not become partners with each other or with an individual in any enterprise. Defendants cannot be charged upon the ground that they bid for the money as

partners; and the petition does not count upon any such contractual relation. Aurora State Bank v. Oliver, 62 Mo. App. 390; Whittenton Mills v. Upton, 76 Mass. 582; 1 Morawetz on Corporations (2 Ed.), p. 800. (7) The officers of the banks at Windsor had no authority to bind these banks by any such arrangement as that set up in the petition. There is no evidence to show that the directors empowered them to make such agreement. The cashier of a bank has no authority to bind the bank except in the performance of those things that are in the general scope and line of his duty as such officer. Daviess County Savings Association v. Saylor, 63 Mo. 27; Hume v. Eagan, 83 Mo. App. 576; Vansant v. Hobbs, 64 Mo. App. 628; People's Saving Bank v. Hughes, 62 Mo. App. 576; Windsor v. Bank, 18 Mo. App. 665; Lane on Banking, 131; Jones v. Williams, 139 Mo. 1; Calumet Paper Co. v. Haskell, 144 Mo. 331. (8) There can be no ratification of the acts of the executive officers without knowledge on the part of the directors of all the facts. Windsor v. Lafayette County Bank, 18 Mo. App. 665; Newland Hotel Co. v. Lowe Furniture Co., 73 Mo. App. 135; 1 Am. and Eng. Ency. Law (2 Ed.), 965.

FOX, J.—This cause is now pending in this court upon appeal by plaintiff, the county of Henry, from a judgment of the Pettis County Circuit Court in favor of the defendant.

We know of no better way of indicating the nature and character of this controversy than by the reproduction of the petition and answer which present the issues that were determined by the trial court. Omitting formal parts, the petition thus states the cause of action by the plaintiff:

"Now at this time comes the plaintiff, the county of Henry, in the State of Missouri, and for its amended petition and cause of action against the defendant,

states that the plaintiff is a municipal corporation and political subdivision of the State of Missouri, and as such is entitled to sue in the courts of this State; that the defendant, the Citizens Bank of Windsor, is a banking corporation, duly organized and existing under the laws of this State, and was, at all the times mentioned in this petition, and now is, such corporation, and engaged in the banking business at the city of Windsor, in the county of Henry; that at the regular May term, 1903, of the county court of said Henry county, it was the duty of said court to select and designate a county depositary for the deposit of the money belonging to said county, including school funds, and the duty of said county court prior to said term to advertise for bids from banking corporations, individual bankers and others, for the privilege of being selected as such depositary, and said county court, as provided by law, did advertise for bids from such banking corporations, individuals and others for said purpose; that at and prior to the time of the term of said county court, the Farmers Bank of Windsor and the Citizens Bank of Clinton were banking corporations, doing a banking business at the cities of Windsor and Clinton, respectively, in said Henry county, and Salmon & Salmon, a firm composed of George Y. Salmon and Harvey W. Salmon, were engaged in the banking business at the city of Clinton aforesaid, as individuals private bankers; that prior to the said May term, 1903, and in anticipation of the selection of a county depositary by said county court, the defendant, the Citizens Bank of Windsor and the Farmers Bank of Windsor, the Citizens Bank of Clinton and the said Salmon & Salmon entered into an agreement, by the terms of which it was understood and agreed that the bids of said banks and of said Salmon & Salmon should be so placed with said county court that the bid of said Salmon & Salmon should be the highest bid, and that said Salmon

& Salmon should be selected and designated the county depositary of said Henry county, at said May term, 1903, of said county court, and that the funds of said Henry county, after being received by said Salmon & Salmon as such depositary, should be divided and apportioned among the said banks, to-wit: the defendant, Citizens Bank of Windsor, said Citizens Bank of Clinton and said Farmers Bank of Windsor and said Salmon & Salmon, for the use and benefit of said several banks; that in pursuance of said arrangement and agreement bids were so made that the bid of said Salmon & Salmon was the highest bid for the county money of said Henry county made to the county court at said May term, 1903, and said Salmon & Salmon were, at said term, selected by said county court as such county depositary for Henry county, for the term of two years and sixty days next ensuing said May term, 1903; that said Salmon & Salmon qualified under such selection and gave bond, and were duly designated by said county court the depositary of the funds of Henry county, for the term above mentioned, and all the funds of said Henry county, including the school funds, amounting in all to the sum of sixty-five thousand dollars, became and were deposited with said Salmon & Salmon as such depositary, and thereafter, and until the 20th day of June, 1905, all the moneys belonging to the county of Henry, including school funds, were paid to and deposited with the said Salmon & Salmon, amounting in the aggregate to the sum of three hundred and twenty thousand dollars; that after the selection and designation of Salmon & Salmon as county depositary, as aforesaid, to-wit, on the — day of July, 1903, said Salmon & Salmon, in pursuance of the agreement aforesaid, for the division of the county funds among said above-named banks, turned over and delivered to the defendant, Citizens Bank of Windsor, out of the county money, belonging to Henry county,

the sum agreed upon to be apportioned to the defendant, to-wit, the sum of ten thousand dollars, and defendant, Citizens Bank of Windsor, took and received the said sum of ten thousand dollars, as and for its share of the moneys obtained from the county of Henry, by the means and under the arrangement and agreement aforesaid, and did use, lend and receive the benefits thereof; that on the 20th day of June, 1905, said Salmon & Salmon were, and for many years prior thereto had been, insolvent, and on said day their bank was closed, and has ever since remained closed, and on said day they failed and ever since have failed to pay checks drawn upon them for the county funds of Henry county, by the proper officer; that there was due to Henry county on said 20th day of June, 1905, and still remains due and unpaid, on account of moneys belonging to plaintiff, Henry county, deposited with said Salmon & Salmon as such depositary, the sum of sixty-three thousand, nine hundred, seventy-six and seventy-six one-hundredths dollars; and that the defendant, Citizens Bank of Windsor, has wholly failed and refused to pay the aforesaid sum of ten thousand dollars, of the money of Henry county, received by it as aforesaid, but now retains and holds the same, though plaintiff has demanded the payment thereof.

"Wherefore, the plaintiff asks for judgment against the defendant, Citizens Bank of Windsor, for the sum of ten thousand dollars, and for costs, and for all other proper relief in the premises."

The answer of the defendant interposed to this petition admits that the defendant is a banking corporation duly organized and existing under the laws of this State and that plaintiff is a municipal corporation and political subdivision of the State of Missouri. Then followed a denial of each and every other allegation contained in the petition with a prayer that the defend-

ant go hence without day and for the recovery of costs.

The trial of the issues thus presented by the pleadings was proceeded with at the February term, 1907, of the Pettis County Circuit Court. At the trial, concerning certain facts involved in this proceeding, there was a stipulation filed. By this stipulation it was conceded that Salmon & Salmon were duly selected as county depositary in May, both in 1901 and again in 1903, and that they gave bond as required by law under such selection, and that the sureties on the bond given in May, 1903, are solvent, and have sufficient property to enable the county to collect the full amount due from said depositary. That the funds belonging to the county in May, 1903, amounted to $65,000, and were then turned over to said depositary and that all moneys belonging to the county after May, 1903, were turned over to and paid into such depositary according to law. That Salmon & Salmon failed on June 20, 1905, and since that date have failed to pay any checks drawn on the county depositary for the county money, and have been adjudicated bankrupts, are wholly insolvent, and were wholly insolvent at the dates of their said selection as county depositary. That Salmon & Salmon as county depositary at the time of their failure were indebted to Henry county in the sum of $63,976.76, and that such sum includes the money sued for in this case. That Henry county sued for the money on the depositary bond of Salmon & Salmon of May 19, 1903, and on June 14, 1906, recovered a judgment for $63,000, and that an appeal was taken by the sureties to the Supreme Court (since affirmed by Court in Banc). That the county sued the Citizens Bank of Clinton for the sum of $16,000, the amount it held at the time of the failure of Salmon & Salmon, and recovered a judgment for that amount and that the same has been paid to the county, thus

reducing the said judgment of $63,000 against the sureties to $47,000 and interest.

There is practically no substantial dispute as to the facts developed at the trial in addition to those embraced in the stipulation heretofore referred to; therefore we shall not undertake to recite in the statement of this cause in detail the testimony introduced, but will briefly indicate the nature and character of the proof upon which this cause was submitted to the court.

The testimony shows that the county court of Henry county at the May term, 1903, of said court, was to let the money of the county under the provisions of the statute upon that subject, to such banking institution offering the highest rate of interest. Prior to the time designated as that at which the county court was to select a depositary for the county money, there was an agreement and understanding entered into between Salmon & Salmon, private bankers at Clinton, Missouri, and the respondent in this cause, the Citizens Bank of Windsor, by which it was agreed that Salmon & Salmon should put in the highest bid and be selected as the depositary for Henry county, the plaintiff in this cause, and in consideration of such agreement, if Salmon & Salmon were selected as the depositary they would deposit out of the funds received from the county by virtue of being the depositary thereof in the respondent's bank the sum of ten thousand dollars, for which said bank should pay to Salmon & Salmon the same rate of interest that they were required to pay to the county under the terms agreed upon in the selection of Salmon & Salmon as the county depositary. The testimony further shows that this agreement by Salmon & Salmon bank to deposit with respondent's bank, was never in fact put into execution, and that the ten thousand dollars that respondent's bank was to receive under the agreement as heretofore

indicated, was never in fact deposited in said bank; but Salmon & Salmon fully recognized that there was an agreement to deposit the sum of ten thousand dollars in accordance with the agreement and understanding entered into between the parties, and on July 14, 1900, the following instrument evidencing such recognition of the first arrangement and agreement, was signed by Salmon & Salmon:

"Whereas, the Citizens Bank of Windsor, Missouri, is entitled to $10,000 of the county funds of Henry county, Missouri, for the year ending July 1, 1905, and whereas said bank has agreed that we may retain their said share of said funds during the time mentioned above:

"Now, therefore, in consideration of said agreement on the part of said bank, we hereby agree to pay it the sum of $400 July 1, 1905, and we also agree to pay the interest due the county on said funds.

"SALMON & SALMON."

The respondent, Citizens Bank of Windsor, held a similar obligation to the one above quoted from Salmon & Salmon for the year ending July 1, 1904, and received for that year the sum of four hundred dollars as designated in the obligation herein indicated.

Witness Joseph S. Calfee, who gave his testimony in the form of a deposition, testified concerning the agreement of Salmon & Salmon to deposit out of the county funds ten thousand dollars in respondent's bank. His testimony in substance was that Salmon & Salmon promised to make a deposit of ten thousand dollars and in lieu of making that deposit they were to pay defendant four hundred dollars a year.

Mr. Casey, who was the manager of the Salmon & Salmon bank, also testified upon this subject. The substance of his testimony was to the effect that none of the money of Henry county was sent to respondent's bank under the agreement heretofore referred to,

but that instead of depositing money with respondent the Salmon & Salmon bank retained the money and paid them a bonus.

There is an entire absence from the record before us of any testimony showing any entry upon the books of Salmon & Salmon tending to show that there was an account kept between the Salmon & Salmon bank and the respondent in this cause, the Citizens Bank of Windsor, concerning the deposit of this ten thousand dollars, or the borrowing of this fund from the respondent. There is also an absence from the record of any showing upon the books of the respondent that any such deposit was made or that any loan of such an amount was made by respondent to Salmon & Salmon. The record fails to disclose any obligation or security taken from Salmon & Salmon by the respondent, except the agreement to pay to respondent the four hundred dollars as designated in the agreement.

This, by no means, covers the entire volume of testimony introduced in this cause; however, in our opinion it sufficiently indicates the nature and character of the transaction upon which this action is predicated, as well as the character of testimony upon which it is sought to successfully maintain the proceeding.

At the close of the testimony the court, in conformity to its views upon the facts developed at the trial, declared the law to be that under the evidence in this case plaintiff cannot recover and the finding must be for the defendant. In accordance with this declaration of law judgment was rendered in favor of the defendant and the plaintiff properly preserved its exception to the adverse rulings of the court, and on the same day that the judgment was rendered filed its motion for a new trial, which was by the court overruled, to which action of the court plaintiff excepted.

From the judgment rendered in this cause, in due

time and proper form this appeal was prosecuted to this court, and the record is now before us for consideration.

## OPINION.

Upon the record before us, as is briefly indicated in the foregoing statement of this cause, learned counsel for appellant predicates the following assignments of error:

"1. The court erred in giving the instruction in the nature of a demurrer to the evidence.

"2. The court erred in rendering judgment for the defendant.

"3. The court should have rendered judgment on the facts in favor of the plaintiff."

At the very threshhold of this controversy we deem it important to first definitely determine the nature and character of this proceeding. That there is no privity of contract between the appellant and the respondent, is apparent; nor is there any contractual relation whatever disclosed by the record, between the parties to this suit. The allegations in the petition emphasize the correctness of this conclusion. They clearly indicate that plaintiff does not seek a recovery in this action upon a contract either expressed or implied.

It will be observed by an analysis of the allegations in the petition of plaintiff that the details of the arrangement and agreement between the respondent and Salmon & Salmon, by which bidding was to be depressed and competition avoided at the time designated for the selection of the county depositary by the county court, are fully set forth. This is followed by allegations wherein it is averred that in pursuance of such arrangement and agreement the bank of Salmon & Salmon was selected as the county depositary and in ac-

cordance with the agreement as heretofore indicated, they apportioned ten thousand dollars of money received from the plaintiff to the respondent in this cause and deposited said sum in respondent's bank. In other words, it is manifest from the averments in the petition of plaintiff that its cause of action is predicated upon the theory that the respondent through a wrongful and unlawful combination with Salmon & Salmon to depress bidding at the time of the selection of the depositary for the county funds by the county court, procured ten thousand dollars of the funds belonging to the plaintiff, and that such funds had been deposited in respondent's bank in accordance with the unlawful and fraudulent agreement heretofore referred to. This is substantially the cause of action stated in the petition and by it plaintiff seeks to compel the payment of the ten thousand dollars as a fund belonging to plaintiff and which was deposited in the bank of respondent.

We have the briefs of learned counsel, both for appellant and respondent, now before us and find numerous legal propositions discussed. In fact every phase of this case is very earnestly and ably presented by counsel and everything is said that could in any way be urged as applicable to the propositions disclosed by the record.

I. It is insisted by learned counsel for appellant that Salmon & Salmon in their application to the county court to have their bank made the depositary for the funds of Henry county, as applicable to the ten thousand dollars which is sought to be recovered by the plaintiff in this proceeding, were acting as the agent of this respondent, and it is earnestly urged that the respondent in this case, by reason of having obtained this money through the agency of Salmon & Salmon, occupies the position of an undisclosed principal. In other words, the contention of the appellant in its

final analysis may thus be briefly summarized, that is, that Salmon & Salmon was the disclosed principal and that the other banks, including the respondent in this case, who had entered into the combination to depress bidding, were, as applicable to the funds to be apportioned to them under the arrangement and agreement between the parties, undisclosed principals, and that under the law they should all be treated as principals and a recovery can be maintained upon that ground.

We have given this proposition which is so earnestly and ably presented by counsel, our most careful consideration, and with all due respect to the ability and learning of counsel representing appellant, we are unable to give our assent to this insistence. A recovery cannot be maintained upon that ground, if for no other reason, because the cause of action as stated in the petition does not proceed upon that theory. It is manifest from the averments in the petition that a recovery in this proceeding is not sought upon the ground that the defendant was an undisclosed principal with Salmon & Salmon, nor upon the ground that there was any contractual relation, either expressed or implied, disclosed or undisclosed, existing between the plaintiff and the respondent. We repeat, that the cause of action as stated in the petition is for the recovery of money alleged to be in the hands of the defendant and which was wrongfully and improperly procured from the plaintiff. In other words, that the defendant fraudulently procured ten thousand dollars of the funds belonging to the plaintiff and that in contemplation of law, at the time of the failure of Salmon & Salmon, the defendant had said sum of money in its possession, which was the property of Henry county.

It is fundamental that the recovery sought in this proceeding by the plaintiff must stand or fall on the

208 Sup—15

cause of action embraced in the pleading. It cannot sue upon one cause of action and recover upon another. Another cardinal rule applicable to pleadings and practice, which has repeatedly received sanction by this court, is "that a party will not be permitted to try his cause upon one theory in the trial court and if unsuccessful on the legal battlefield of his own choosing, spring a fresh theory upon his adversary and undertake finally to enter the contest in this court forming entirely different lines of legal battle." [Bray's Admr. v. Seligman's Admr., 75 Mo. 31; Wilson v. Railroad, 87 Mo. 431; Sumner v. Rogers, 90 Mo. 324, and cases cited; Traber v. Hicks, 131 Mo. 180; Carson v. Cummings, 69 Mo. 325; Ross v. Mather, 51 N. Y. 108.]

But aside from all this, it may be conceded, for argument's sake, that the plaintiff in its petition seeks a recovery on the theory that the respondent was an undisclosed principal with Salmon & Salmon, yet in our opinion a recovery cannot be maintained upon that theory upon the facts disclosed by the record in this proceeding. The fundamental error assumed by the plaintiff upon this insistence is that there can be any such party as an undisclosed principal as applicable to this case.

The selection of a depositary for the funds of the respective counties of this state is purely statutory, and the county court in making such selection is limited, in the exercise of the powers conferred by the statute, to the doing of those things which are embraced within the provisions of the statute applicable to the subject. Section 6817, Revised Statutes 1899, imposes a duty upon the county court of each county in this State to receive proposals from any banking incorporation, association or individual banker in such county as may be desired to be selected as the depositary of the funds of such county. It also provides that notice that such bids will be received shall be given.

Section 6818, Revised Statutes 1899, provides the manner in which the banking corporation, association or individual banker may make his bid with a view of having it considered by the county court. Section 6819 makes it the duty of the county court at noon on the first day of the May term of said court to publicly open the bids and cause each bid to be entered upon the records of the court and to select as the depositary of all funds of the county, including the school funds, except the capital school fund, the banking incorporation, association or individual banker offering to pay to such county the highest rate of interest per annum for such funds, with the proviso that the county court shall have the right to reject any and all bids. Sections 6820 and 6821, Revised Statutes 1899, provide in detail for the execution of the bond and the transfer of the funds of the county to the depositary.

It will be observed that the statute as heretofore indicated, relating to the subject of county depositaries, provides in detail how the depositary shall be selected, and it is there expressly required that the bids of the respective banking institutions shall be publicly opened and each bid shall be entered upon the records of the court. In other words, the law regulating this subject requires that the banking institutions with whom the county court is authorized to deal upon this subject, as well as the amount of the bids of such institutions, shall be disclosed upon the records of the county court. The county court had no authority, under the provisions of the law conferring upon it the power to select the depositary, to apportion the county funds among two or more banking institutions; only one of such banking institutions can be selected as the depositary for the county funds; and by the very terms of the statute the theory that one banking institution may act as the agent of others doing a banking business, and include them within their bid submitted to

the county court, either disclosing or without disclosing the names of the banking institution, is absolutely negatived. It being true by virtue of the provisions of the statute that the county court can only select one of the banking incorporations, associations or individual bankers as such county depositary, it must logically follow that two or more of such banking institutions could not jointly submit a bid to the county court with the view of being selected as the county depositary. The county court is absolutely without any authority to entertain such bid or to enter into a contract selecting such joint bidders as the depositary for the county funds. It logically follows from this that if the statute does not authorize a joint bid by two or more banking institutions, then there can be no such thing as an undisclosed principal. The theory of an undisclosed principal, as applicable to the selection of a county depositary, can only be predicated upon the idea that there is more than one banking institution included in the bid for the selection of the depositary for the county funds. In other words, it is based upon the theory that the banking incorporation, association or individual banker selected as the depositary for the county funds by the county court represented some other banking institution as agent in submitting a bid to the county court and in the procuring of the funds of the county, but the name of such banking institution in submitting such bid and in the procuring of such fund was not disclosed to the county court.

The terms employed in the statute as herein indicated, controlling the subject now under discussion, in no way authorize the county court in dealing with the county funds to treat with any banking institution as an undisclosed principal. The very language employed in the statute indicates the policy of the lawmaking power in dealing with this subject to be that the banking institutions with whom the county court is au-

thorized to contract, together with their bid, should be disclosed by an entry upon the records of the county court. The statute limits the powers conferred upon the county court in dealing with the county funds to contract only with some banking institution that has disclosed its name and its bid, and if a recovery is sought by reason of any contractual relations entered into with the county court it must be in pursuance of the terms of the contract authorized by the statute and against the parties who enter into it.

We do not mean to be understood as holding that, if funds of a county, either legitimately or by some unlawful agreement, find their way into some other banking institution, the county court would not be authorized to pursue such fund and recover it, but we do mean to say that such recovery cannot be sought on the ground that such banking institution having such deposit is an undisclosed principal, or that an action can be maintained at all upon the contract provided for by the statute unless the principal is therein disclosed.

II. It is also insisted that Salmon & Salmon, being the agent of the undisclosed principal, that is, the defendant in this cause, and as such agent conspired with such undisclosed principal, under that state of facts an action can be maintained against all of them or any part of them as joint tortfeasors.

We are unable to give our assent to that contention, and it is sufficient to say of it that the allegations in the petition, which is the basis of the cause of action, does not proceed upon that theory. It is manifest that a recovery in this cause is not sought by way of damages resulting from any injury or loss by reason of the alleged fraud and combination to depress bidding, but is simply an action seeking to recover a particular fund belonging to the county which is alleged to be in the possession of the defendant. Emphasizing the

correctness of this conclusion we find that appellant in its brief entertains a similar view. It is there stated by counsel for appellant that "the prayer of Henry county for judgment against said banks ($10,000 against the Citizens Bank and $5,000 against the Farmers Bank) is based on the contention of appellant that, at the time of the failure of Salmon & Salmon, within the meaning and contemplation of law, and the acts of said several banks and the construction they placed upon the transaction, said Windsor banks had said respective sums of money, the property of Henry county."

It is clear that the recovery sought in this proceeding is not upon the ground that the defendant and Salmon & Salmon were joint tortfeasors. If that was the theory each tortfeasor would be liable for the entire loss of the plaintiff by reason of the wrong committed in which such tortfeasor participated. That is not this case. The plaintiff here is simply pursuing a fund which is in the possession of the defendant, and there can be no recovery upon the theory that the plaintiff has been damaged by reason of a wrong committed by Salmon & Salmon in which the defendant in this cause may have participated.

III. This brings us to the discussion of what we esteem the main proposition involved in this controversy, that is, was the sum of ten thousand dollars of the funds belonging to the plaintiff, which is sought to be recovered in this cause, deposited with the defendant, the Citizens Bank of Windsor? Appellant in this cause very earnestly contends that it was, and the respondent, with equal earnestness, asserts that it was not. The views of learned counsel for appellant in support of this contention are thus expressed in their brief. They say that "Salmon & Salmon became county depositary by the joint act and agreement of themselves and of the defendant bank and others, for

a certain purpose. As county depositary, so selected, they say, 'We have your share of county funds for you, ready for your use, subject to your order.' They received it only as county depositary, they became depositary only by virtue of the act of the defendant and as an agency of defendant for obtaining a certain portion of the county money. Having thus obtained the money, through their depositary agent, Salmon & Salmon, the defendant for a consideration lends this money to Salmon & Salmon, private bankers, who, in that capacity, by their written agreement with defendant, bind themselves to pay not only interest to defendant, but to pay to Henry county the interest due upon the money thus lent. The final arrangement between Salmon & Salmon and the other banks was treated by them as the payment to them respectively of their allotted shares, and was the same in legal effect as if Salmon & Salmon had turned over to them their several portions of the public funds, and had then borrowed it back again. The object of the joint enterprise was to borrow the public funds for the specific term at a nominal interest rate, hire the money out until the term expired, and then return it to the county as the owner of the funds.''

It will be observed in the argument of counsel, as herein indicated, that they base the correctness of their contention upon the theory which has heretofore been fully discussed, that is, that there was a joint contract on the part of Salmon & Salmon and the respondent in this case with the county court which resulted in the selection of Salmon & Salmon as the disclosed depositary for the county funds. In other words, it is argued that Salmon & Salmon acted not only for themselves, but as agent for the respondent in this cause, in the procuring of the county funds, and the respondent, though undisclosed, was in fact embraced in the

contract made by Salmon & Salmon with the county as the depositary for the county funds.

In our opinion the reasons assigned in support of the contention now under discussion are without force or vitality, and it is sufficient to say upon that proposition that what we have heretofore said in relation to the authority of the county court to contract with two or more banking institutions respecting the selection of a depositary for the county funds, is equally applicable to the reasons now assigned as a basis for the contention that the ten thousand dollars which is sought to be recovered in this action, was procured from the county court of Henry county by reason of any sort of contractual relations, either by construction expressed or implied.

Upon the execution, acceptance and approval of the bond of Salmon & Salmon as the depositary of the funds of Henry county, they were entitled to the possession of such funds, and they and their sureties became responsible to the county court for any failure to properly account for such funds; and, there is absolutely no authority by which Salmon & Salmon and the respondent by any arrangement or agreement, could in any way vary the terms of the contract with the county court or render any person other than those embraced and disclosed in the contract liable for any breach of it.

It is essential to keep in view the cause of action as stated in the petition, that is, that plaintiff seeks to recover a fund belonging to it which was deposited in the respondent bank. As applicable to the issues presented by the pleadings we have carefully considered the disclosures of the record and read in detail all of the testimony relating to such issue, and we are unable to reach the conclusion so earnestly contended for by appellant, that there was any of the county funds of Henry county that were ever deposited in the bank

of respondent. It is argued by counsel for appellant that, upon the facts disclosed by the record in this case, the ten thousand dollars, which is sought to be recovered in this proceeding, was at least constructively deposited in the bank of the respondent and then loaned to Salmon & Salmon. We are unwilling to accept the argument of appellant as being sound upon that proposition. A careful examination of the record fails to disclose any of the essential elements of a contract of loan between Salmon & Salmon and the respondent in this case. Salmon & Salmon never parted with any of the funds of Henry county by depositing them in respondent's bank. There is an entire absence of any bond or note executed to the respondent by Salmon & Salmon for a loan, as well as an entire absence of any entry upon the books of either Salmon & Salmon or the respondent that there was any such transaction that occurred. That the arrangement and agreement between Salmon & Salmon and the respondent was entered into and that such agreement was unlawful, wrongful and fraudulent there is no dispute. We in no way commend such agreement as a legitimate business transaction, yet such methods fall far short of resulting in the creation of any contractual relations between the parties to this suit, and the usual presumption that what was agreed to be done was done, is not applicable to this agreement for the reason it was unlawful and not susceptible of being enforced.

The respondent in this case was not entitled to receive the ten thousand dollars sued for by reason of any contract with Henry county. Salmon & Salmon were the only parties under the contract with the county who are entitled to the possession of the county funds, and upon the disclosures of the record in this cause, it will not be seriously contended that there was any actual deposit of any part of the county funds in the possession of Salmon & Salmon made by them in the bank of

respondent. This transaction may thus be briefly summarized: Salmon & Salmon sought to have their bank made the depositary for the county funds of Henry county. For the purpose of procuring such funds at a low rate of interest the unlawful agreement was entered into, between the respondent and other banks with Salmon & Salmon, to defeat competition in the bids to be submitted to the county court respecting the selection of a county depositary. The first agreement was that ten thousand dollars of the funds procured through Salmon & Salmon was to be apportioned to the respondent, and five thousand dollars to some other bank. This agreement, it is true, was unlawful and fraudulent, yet it was recognized by Salmon & Salmon, and was subsequently modified and Salmon & Salmon were to retain the moneys which, under the fraudulent agreement, were to be deposited with the respondent. Salmon & Salmon were the only parties entitled to the possession of the money under the contract with the county, but recognizing such unlawful and fraudulent agreement as between themselves and the respondent for the purpose of retaining the money which they alone were entitled to retain under the contract with the county, they agreed to pay to the respondent the sum of four hundred dollars in pursuance of the modified agreement, as heretofore indicated. In our opinion, it makes no difference whether you denominate the payment of this four hundred dollars as a payment of bonus or a payment of interest, it was simply a private arrangement or agreement, wrongful in its character, but it falls far short of being susceptible of the construction that Salmon & Salmon actually deposited the ten thousand dollars in the bank of the respondent, and that respondent again loaned the money to Salmon & Salmon so as to enable the plaintiff in this cause to recover such sum.

Our attention in support of the contention urged

by the appellant, is directed to the case of In re Salmon, 145 Fed. l. c. 653, and in re Blake, 150 Fed. l. c. 282. In those cases a recovery was sought from the Citizens Bank of Clinton of money belonging to Henry county deposited in said bank to the amount of sixteen thousand dollars. Those cases are entirely unlike the case at bar. There was no dispute about the fact that the Citizens Bank of Clinton had in its possession sixteen thousand dollars of funds which was a trust fund, alleged to be the property of Henry county; hence, it is manifest that those cases are by no means to be considered as decisive of the propositions confronting us in the case at bar. As to the discussion in those cases of the principles of law concerning the liability of joint tortfeasors and undisclosed principals, which is sought to be made applicable to this case, we express no opinion other than what we have heretofore indicated.

Having reached the conclusions upon the propositions to which we have herein given expression, we deem it unnecessary to discuss the other proposition which is presented by counsel in their briefs, that the county, with full knowledge of all the facts and the arrangement between the banks at the time of the selection of the depositary, prosecuted to final judgment a suit upon the contract, that is, the depositary's bond, and obtained an affirmance of that judgment in this court, thereby affirming the contract entered into with Salmon & Salmon as the depositary, and by reason of such course pursued by the county it is in no position to maintain this action. That proposition is not involved in this proceeding. If this action was to recover damages against this defendant as a joint tortfeasor with Salmon & Salmon by reason of the perpetration of a fraud upon the plaintiff in procuring the county funds, and such damages were to be measured

by the amount of county funds deposited with Salmon & Salmon, the defendant might be in a position to invoke that universally recognized doctrine that "a remedy of a party claiming that a fraud has been practiced, by reason of which he was induced to enter into a contract, is that upon the discovery of the fraud he has his election to affirm the contract and bring an action for the recovery of damages sustained by him, or to disaffirm the contract and restore to the other party all he has received under it and demand and recover from him all he has parted with in pursuance of the contract." However, as heretofore indicated, that is not the nature of this action, but is simply one where, in effect, the averments are that ten thousand dollars of the public funds of Henry county was turned over and delivered to the defendant, Citizens Bank of Windsor; that said bank took and received said sum of ten thousand dollars and did use and lend and receive the benefits thereof, and has wholly failed and refused to pay the aforesaid sum of ten thousand dollars of the money of Henry county, but now retains and holds the same, though plaintiff has demanded the payment thereof. Nor is this an action to recover for damages by reason of the perpetration of a fraud which may have resulted in a loss to the county in not receiving an increased amount of interest by reason of the arrangement defeating any competition in the bidding; therefore, it is clear upon any theory of this case as presented by the pleadings, that the last proposition as above suggested has no application to the real question involved in this proceeding.

What is said in this opinion, that, if this action was one to recover damages against this defendant as a joint tortfeasor with Salmon & Salmon, the defendant might be in a position to invoke the universally recognized doctrine as herein indicated, must not

be construed as holding that an action for damages, upon the facts disclosed by this record, could be maintained. We simply say that that question is not involved in this proceeding, and therefore express no opinion as to whether or not an action for damages could be maintained.

We have given expression to our views upon the legal propositions presented by this record, and we see no escape from the conclusion that the plaintiff is not entitled to recover in this action. The money sought to be recovered was never deposited with the defendant; hence, was never loaned to Salmon & Salmon, and upon the facts disclosed by the record, conceding for the sake of argument that the agreement to deposit and the modification of it was valid, as applicable to this cause, the relation of debtor and creditor never existed between Salmon & Salmon and the defendant in this cause, other than for the sum of four hundred dollars, which Salmon & Salmon, by the modified agreement, was to pay for a release of their obligation in the first agreement to apportion and deposit with the defendant bank.

We repeat, that Salmon & Salmon, under the contract with the county, were entitled to the possession of the funds received from the county, and, in pursuance of the subsequent arrangement by which they were to retain the money, they were simply keeping what, under the terms of the contract, belonged to them, and by no sort of construction did Salmon & Salmon become the creditor of the defendant under the modified agreement offered in evidence for the sum of ten thousand dollars, or any other sum, other than, as before suggested, the amount they were to pay the defendant for the release of the obligation to make the deposit.

Entertaining the views as herein indicated, the judgment of the trial court should be affirmed, and it is so ordered.

*Gantt, C. J., Burgess, Valliant, Lamm* and *Woodson, JJ.,* concur; *Graves, J.,* not sitting.