ALEX BARNES, Respondent, v. CHARLES KNOTT, Appellant.

Springfield Court of Appeals, August 10, 1920.

1. **SALES: Buyer of Undelivered Timber Required to Pay Price, Less Cost of Delivery.** Where a contract for the sale of timber fixed a price at the point of delivery, but provided that, if the seller failed to deliver the timber, buyer might have it delivered and charge the cost to the seller, the buyer is liable for the contract price of timber which he procured to be delivered, less only the

expense of delivery paid by him, regardless of whether the failure to deliver was justified or not.

2. ———: **Buyer of Timber Not Required to Pay for Timber Cut, but Not Delivered.** Where a contract for the sale of timber required delivery to buyer, but authorized him to procure delivery and charge the expense to the seller if the seller failed to deliver, the buyer is not liable for all the timber cut by the seller, but is liable only for that delivered by the seller, or that whose delivery was procured by the buyer, provided the latter exercised due diligence to procure the delivery of all the timber.

3. ———: **Buyer of Timber Entitled to Credit for Depreciation Due to Failure to Deliver.** Where a contract for the sale of timber delivered to buyer authorized the buyer to procure delivery if the seller failed to deliver, the buyer is entitled to credit for the depreciation in value of some of the timber between the time it was cut and the time its delivery was procured by him, where there was no sufficient excuse for the seller's failure to deliver the timber without delay.

4 **JUDGMENT: Defendant Cannot Object to Recovery on Contract on Count in Conversion, Where He Filed Counterclaim on Contract.** Defendant cannot object that plaintiff recovered judgment on contract on count, which was based on conversion, where defendant filed a counterclaim to that count which set up the contract, which was put in issue by plaintiff, and the trial was had on the issue thereby raised.

5. ———: **Recovery Held Not to Exceed Amount Alleged in Pleading.** Where a count to recover for timber sold claimed the value of the timber when cut, which was half its value when delivered, as required by the contract, a judgment, allowing recovery for a smaller quantity of timber at the contract price after delivery, with a counterclaim to defendant for his expense in procuring delivery, was not for more than the amount claimed, though the sum allowed before deducting the counterclaim exceeded the sum alleged.

6. **APPEAL AND ERROR: On Excessive Judgment by Referee, Appellate Court Will Render Proper Judgment.** Under the express provision of Laws 1919, p. 213, the appellate court, in a case tried before a referee in which a judgment was rendered for an amount greater than plaintiff was entitled to, must render judgment for the proper amount.

Appeal from Circuit Court of Mississippi County.—
*Hon. Frank Kelly*, Judge.

JUDGMENT RENDERED.

*Gallivan & Finch* for appellant.

(1) A plaintiff cannot sue upon one cause of action and recover on another. Recovery must always depend up the cause of action stated in the petition. St. Louis v. Wright Contracting Co., 210 Mo. 491; Henry County v. Citizens Bank, 208 Mo. 209, 224; Carson v. Cummings, 69 Mo. 332. (2) A judgment in excess of the amount sued for as set forth in the petition is error and such judgment cannot stand. Moore v. St. Louis S. F. Ry. Co., 117 Mo. App. 384; Middendorf v. Bonaventure, 150 Mo. App. 536-37; Balch v. Myers, 65 Mo. App. 427; Impkamp v. Transit Co., 108 Mo. App. 664; Powell v. Harrell, 92 Mo. App. 412; Cauthorn v. Berry, 69 Mo. App. 408, 412; Gervin v. St. Louis Refrigerator Co., 66 Mo. App. 315; Paulson v. Collier, 18 Mo. App. 583, 605; Moore v. Dixon, 50 Mo. 424; Smith v. Royse, 165 Mo. 654, 658; 23 Cyc. 795. (3) Both under the contract and the law it was defendant's duty to reduce the damages caused by plaintiff's breach of contract and the expenses defendant incurred in good faith for such purpose are properly chargeable to plaintiff. 17 C. J. 806; Mitchell v. Violette, 203 S. W. 218; Gilwee v. Pabst, 195 Mo. App. 490, 193 S. W. 886; Myers v. Adler, 188 Mo. App. 607; Coffman v. Railroad, 183 Mo. App. 622; Wallace v. Workman, 187 Mo. App. 113, 173 S. W. 35; Niehaus v. Gillanders, 184 S. W. 949; State ex rel. v. Powell, 44 Mo. 436.

*Boone & Lee* for respondent.

(1) Where the judgment is technically wrong the appellate court may modify it or affirm accordingly. State ex rel. v. Trust Co., 209 Mo. 494; Henry County v. Salmon, 201 Mo. 136. (2) Mere irregularities in the judgment which are not prejudicial to the defendant

are not reversible error. Edwardson v. Garnhart, 56 Mo. 81; West v. Bailey, 196 Mo. 517. There was conversion of the timber on the Hunter land in this case. Davis v. Barnes, 3 Mo. 137; Watson v. Gross, 112 Mo. App. 615; Shewalter v. Mo. Pac. Ry., 84 Mo. App. 589; State v. Omaha Bank, 59 Neb. 483.

BRADLEY, J.—Plaintiff filed his petition in three counts. In the first he alleges that in September, 1912, he contracted with defendant for the sale of not more than 200,000 feet of cypress timber which he was to cut from the Amberg land, and deliver in a reasonable time at the mouth of Lee-Rowe ditch; that the price agreed upon was $7 per thousand; that plaintiff delivered 63,669 feet, and that defendant accepted this timber, but failed to pay for it. Plaintiff prayed judgment on this count for $573.02. In the second count plaintiff alleges that in the spring of 1914, he sold and delivered to defendant at Lee-Rowe ditch certain maple, oak, cottonwood and ash logs of the value of $513.85, and that defendant failed to pay for these, and judgment was asked for their alleged value. In the third count plaintiff alleges that in the year 1914 he was the owner of certain ash, cypress, cottonwood and other timber, and that defendant, had taken and converted this timber, to plaintiff's damage in the of $2127.23 for which sum judgment was asked.

Defendant answered by general denial, and a counterclaim. The counterclaim goes to the third count of plaintiff's petition. Defendant alleges that on September 18, 1913, he entered into a written contract with plaintiff for the purchase of certain timber, as follows: Oak No. 1, at $15; No. 2, $8; cypress at $9; cottonwood at $12; ash No. 1, at $16; and No. 2, at $8. That defendant was to pay one-half less the stumpage when the timber was cut and rafted, and ready for delivery, and the balance when delivered at the mouth of James bayou; that it was provided in the contract that if plaintiff failed to deliver the timber at the mouth of said bayou that defendant had the right to take possession of said

timber, employ the necessary help, and charge the expense of taking care of said timber to plaintiff, and pay the said expenses out of the proceeds of the timber. That defendant under the contract paid plaintiff the sum of $2081.31; that before defendant took possession of said timber, and after the $2081.31 had been paid, and after the high water had come and gone defendant demanded that plaintiff deliver the timber as agreed, and that plaintiff failed to do so, and that defendant, in order to save said timber, and prevent what he had paid from being a total loss, took charge of the timber as provided in the contract. That the necessary expenses incurred in handling said timber were $2240.41; that what he had paid to plaintiff, and what he was compelled to pay to get the timber out amounted to $4321.72, and that he realized only $3693.68 out of the timber, and he asked judgment against plaintiff in the sum of $628.04. Defendant filed with his counterclaim the contract on which he relies; also an itemized statement of charges against plaintiff from August 22, 1913, to October 27, 1915, which itemized statement contains all that defendant claims to have furnished plaintiff in the way of supplies, and money, and said statement also contains the items of expense incurred in taking care of the timber under the contract. Defendant also filed an itemized statement of credits due plaintiff as claimed by him (defendant) amounting to $3693.68. The reply denied the new matter, and particularized concerning some specific items.

The cause was filed in New Madrid county, but went on change of venue to Mississippi county, and was there referred to O. W. Joslyn, Esq. of the Mississippi county bar as referee. The referee filed a report February 20, 1918, disposing of all counts in the petition, and also the counterclaim, and found after allowing defendant's counterclaim that plaintiff was entitled to judgment in the sum of $932.39, and recommended judgment in that sum. The court sustained defendant's exceptions to the referee's report, and rereferred the cause to the referee. The referee heard further evidence and filed a

supplemental report July 15, 1919, in which he recommended that plaintiff recover on the first count $483.09; second count $267.18; third count $4094.21; and that defendant recover on his counterclaim $4112.92. Exceptions were filed to the supplemental report, but overruled, and judgment was rendered on the whole case in favor of plaintiff for $732.46, and defendant appealed.

The timber mentioned in the first and second counts of plaintiff's petition came from what is designated as the Amburg land. The referee recommended, and the court gave judgment on these two counts in the sum of $751.17. Defendant admitted that he received from plaintiff logs from the Amburg land amounting to $721.94, and in his statement here says that "the difference being so small this feature of the case will not be considered."

The timber mentioned in the third count of plaintiff's petition came from what is designated in the record as the Hunter land in the contract of September 18, 1913. The referee found that plaintiff working under this contract cut a large amount of timber from the Hunter land, cut float roads, and made other preparations toward floating this timber to the mouth of James bayou, the place of delivery; that during the progress of the work defendant was furnishing plaintiff with money under this provision of the contract: "This timber to be paid for, one-half, less the stumpage, when these logs are cut, measured and rafted, and the float roads prepared, and the balance when the logs are delivered." The contract provided that plaintiff was to cut, raft and deliver to the mouth of James bayou "when there was sufficient water." It also provided that "the cutting of these logs is to begin at once, and to be prosecuted diligently as weather and other conditions will permit, until the delivery is completed. And if I fail to fulfill my part of this agreement I hereby authorize Charles Knott and Co. to take charge of this timber, do the necessary work and charge the same to my account."

Defendant in his brief gives his theory of the case as follows:

"As we view this case a proper decree under the pleadings and evidence can only be rendered by a consideration of the first two counts of plaintiff's petition and defendant's counterclaim. In the counterclaim appellant gave Barnes credit for the logs received from the Hunter land and also from the Amberg land. The amount of credit given Barnes for the Amberg timber was $721.94, and the amount of credit the referee found was due him was $751.17. The difference of $29.23 should be given as an additional credit on defendant's counterclaim, and judgment rendered for appellant and against respondent for the amount due appellant as shown by his counterclaim, to wit, $628.04, less the sum of $29.23 or $598.71. This will dispose of the whole matter fairly and give both parties credit for everything due each of them—will put the loss for damaged and lost timber on the one responsible for it, and not on the one who sought to save it."

As we understand the record the disposition urged by defendant would result in allowing plaintiff nothing for what he did towards getting the Hunter timber ready for delivery. We cannot accept this view. The contract provided in effect that if plaintiff failed to fulfile his pare of the contract that defendant was to take charge and do what plaintiff should do, and charge the expense to plaintiff. If the timber when delivered at the mouth of James bayou was worth more than it cost defendant to deliver it, then he, under the contract, would be required to account to plaintiff for the difference. The clause in the contract providing for defendant's taking charge in the event of plaintiff's failure to deliver in no way affected the contract price, but only substituted the defendant to do and perform the things which plaintiff had agreed to do. Defendant had advanced over $2000 to plaintiff on this Hunter timber, and naturally he would be interested in at least getting his money back, and as contended by plaintiff, defendant had two remedies. He could have sued plaintiff for

breach of the contract, or he could proceed under the contract and take charge, and deliver the timber himself. He chose the latter course which he had a right to do. But in electing to take charge and finish the delivery himself, he was required to account to plaintiff for the timber he received. Plaintiff gave as an excuse for not delivering the timber from the Hunter land that there was at no time sufficient water to float the logs from the place where cut to the place of delivery. There was evidence offered by defendant tending to show that plaintiff might have floated the logs had he had sufficient crew, and the referee found "that had a sufficient crew been put on this work, the timber might have been floated out." But we do not think that it is of consequence that plaintiff might have floated the timber, to the place of delivery. Under the contract it was contemplated that plaintiff might fail to deliver this timber, and such a contingency was provided for. So far as the contract provided plaintiff was at liberty to "fail to fulfill" for any reason he might choose, but in failing to fulfill defendant had the right to fulfill for him, and charge him up with the expense of carrying out the contract.

The referee in his first report found that defendant should be charged on the third count of plaintiff's petition with the timber as scaled by him in the woods. Defendant was urging that he should not be responsible for all the timber cut and scaled on the Hunter land, because some of it by reason of plaintiff's failure to float it out when he could was so damaged that it was worthless, and that he should not be responsible for such timber, and for any timber that was not delivered to the mouth of James bayou. Clearly defendant was right in this contention. He should not be required to pay for timber that was rendered worthless by plaintiff's default, and he should not be required to pay for timber that was not delivered to the place of delivery, even though defendant was making the delivery himself, standing in plaintiff's shoes for that purpose, provided he made a reasonable effort at delivery; and plaintiff makes no complaint on that score. The cause was re-

referred to the referee ''for the purpose of determining how many logs under the contract were delivered to the mouth of James bayou.'' The referee in his second or supplemental report found that there were delivered at the mouth of James bayou 117,222 feet of ash; 119,656 feet of cypress; 320 feet of oak; 2401 feet of cottonwood and 15,117 feet of maple, and that defendant should have a credit on the previous report of $199,93.

As we have stated defendant urges that he should not be required to pay the contract price for timber that depreciated in value by being left in the woods especially when such depreciation is due to plaintiff's failure to comply with his contract. We think that this point is well taken. Defendant was buying the timber delivered. He did not buy it in the woods, and if it became worm eaten and defective because of plaintiff's failure to deliver then he, and not defendant, should sustain the loss, It would be manifestly unjust under the contract to require defendant to pay for number one timber, when it in fact did not so grade. To do this under the circumstances here would in effect, be making defendant pay for the consequences of plaintiff's failure to deliver the timber as he agreed. While plaintiff urges that he could not deliver, because of insufficient water, yet the leaning of the referee, to put it most mildly, was to the conclusion that plaintiff could have delivered had he put a sufficient crew on the job. But conceding that plaintiff could not deliver that would be no reason for making defendant pay for the deterioration of the timber left in the woods during the hot summer months. Defendant is not very specific as to this deterioration except as to 49,000 feet of ash which he testified, and this was not seriously disputed, deteriorated and depreciated in value from $15 to $8 per thousand. The contract as appears here fixed the price of ash at $16, but whether the contract was $15 or $16—defendant means that he was required by the finding of the referee and the judgment of the court to pay $7 more per thousand on $49,000 feet of ash than he should, and we agree that he is correct in this contention.

Defendant urges further that the third count of plaintiff's petition is in conversion and that he recovered as in contract, and that he cannot sue upon one cause of action and recover on another. This, of course, is true. [Henry County v. Citizens Bank, 208 Mo. 209, 106 S. W. 622; St. Louis v. Wright Contracting Co., 210 Mo. 491, 109 S. W. 6.] But the whole case was tried on the theory that plaintiff's third count was bottomed on the contract of September 18, 1913, and the same result was reached as would have been had plaintiff not labeled the third count as in conversion. And further defendant in his counterclaim specifically pleaded the contract, and had the third count been eliminated entirely the issues would have been the same. Defendant in effect concedes this to be true, because in his brief in urging that no judgment should stand against him, he says "the contract for the sale of the timber on the Hunter land is only an issue under defendant's counterclaim." Defendant's counterclaim is his answer to the third count, and the reply put the facts therein alleged in issue, and if the cause was tried on defendant's theory he has no room to complain.

Defendant urges that the judgment on the third count cannot stand in any event because it is for more than asked for in the petition. In the third count plaintiff asked judgment for $2127.23. The judgment on the third count was for $4094.21. Taking the petition and judgment alone this excess would appear fatal. But, in fact, it is not. In stating the facts as appear in the third count the timber was valued as it was in the woods before defendant moved it, and as appears was worth about half as much there as when delivered to the mouth of James bayou. The referee found and the court gave judgment for a less number of feet of each kind of timber than plaintiff was demanding in the third count; but valued the timber under the contract price at the mouth of James bayou, and charged plaintiff with the expense of moving the timber from where he left it to the bayou. Plaintiff's third count valued the timber as it lay in the woods, and took no account of the expense of moving

it. There is, therefore, in effect no material difference between plaintiff's third count and the judgment rendered thereon. The judgment on the third count is no more in effect than what defendant invites in his counterclaim, except the amount is somewhat less if measured by the counterclaim. Again it appears that the third count played but little part in this cause, and served merely as a holder for items of credit going to plaintiff under defendant's counterclaim.

It is our conclusion that plaintiff's recovery under the third count of the petition as appears by the judgment of the court, should be reduced in the sum of $343, as representing the depreciation of the 49,000 feet of ash mentioned above. This, of course, results in reducing plaintiff's recovery on the whole case a like sum. Plaintiff should therefore recover on the whole case the difference between the judgment on the whole case given him below, to wit, $732.46 and $343, or $389.46. And in obedience to the Act of 1919, Laws 1919, p. 213, which was in force when judgment below was rendered, we will render judgment here for plaintiff on the whole case is the sum of $389.46 with interest thereon at six per cent from August 1, 1919, the date of the judgment below, and it is so ordered.

*Sturgis, P. J.,* and *Farrington, J.,* concur.