G. W. ROBERTSON, APPELLANT, v. VANDALIA TRUST COMPANY, AND S. L. CANTLEY, COMMISSIONER OF FINANCE, RESPONDENTS.—66 S. W. (2d) 193.

St. Louis Court of Appeals. Opinion filed January 3, 1934.

*W. W. Botts* for appellant.

*Drake Watson* for respondents.

1176

McCULLEN, J.—This suit was brought by appellant (plaintiff) to recover the balance due on a note secured by a deed of trust on a tract of land located in Ralls County, Missouri. A jury being waived, the cause was tried before the court, resulting in a finding and judgment for defendants. Plaintiff appeals.

The Vandalia Trust Company is a Missouri corporation, successor to the Vandalia Banking Association. S. L. Cantley, as Finance Commissioner of Missouri, was in charge of its assets for the purpose of liquidation. At the trial D. R. Harrison was, by consent of the parties, substituted for Cantley. Among the aforesaid assets was the following real estate:

"The Southwest Quarter of Section Thirty-two (32), Township Fifty-three (53), of Range Five (5) West, in Ralls County, Missouri, containing 160 acres more or less."

Plaintiff's petition alleged in substance that on January 1, 1920, H. D. Smith, the owner of said land, conveyed it to C. G. Daniels, as trustee, to secure to plaintiff the payment of a note for money borrowed from plaintiff in the sum of $10,000, and thereafter conveyed said land to one John A. Brooks, by warranty deed dated March 1, 1922, and thereafter, on April 2, 1926, Brooks, by deed, conveyed said land to the defendant trust company, in which deed there was inserted, in a conspicuous place, the following clause:

"Subject to a first deed of trust for $10.000 dated the 1st day of January, 1920, recorded in book 102 at page 543, which the grantee assumes and agrees to pay."

Plaintiff further alleged that said recital in the deed constituted an agreement between Brooks and the trust company, and that it was made for and inures to the benefit of plaintiff, who was and is the owner of said deed of trust and the note secured thereby; that pursuant to said conveyance by Brooks, the trust company took possession of the land, exercised all the rights of ownership thereover and received the rents and profits therefrom until the trust company went into liquidation.

The petition further averred that plaintiff duly presented his claim for the amount of the debt to the Finance Commissioner, who rejected it; that plaintiff had the land sold under the deed of trust, and that after deducting the net proceeds of said sale there remained a balance of $5,984.83 due plaintiff, for which judgment was prayed.

Defendants' amended answer admitted that Smith, as owner of said real estate, executed to plaintiff the note and deed of trust described in plaintiff's petition and the warranty deed dated March 1, 1922, and alleged that on April 2, 1926, Brooks executed a deed purporting to convey the land to defendant Vandalia Trust Company, and that said deed contained the clause recited in plaintiff's petition, that the $10,000 deed of trust was foreclosed on March 5, 1932, that the land was sold for $4,800, and the net proceeds of the sale were credited on the note secured thereby, and denied each and every other allegation in plaintiff's petition.

Further answering defendants averred that from the date of the conveyance by Smith to Brooks, the Vandalia Banking Association, by agreement with Smith for a valuable consideration, became the owner of said land; that said banking association was reorganized December 15, 1924, and became the Vandalia Trust Company; that Brooks never had possession of said land, but that the banking association and its successor, the trust company, held possession and ownership thereof by said deed from Smith to Brooks, subject to said deed of trust, but without in any manner assuming it.

The amended answer further alleged that Brooks held merely the naked legal title to said land in trust for the trust company, and never, at any time, claimed to have any interest therein, but always recognized the trust company as the *bona fide* owner thereof; that the deed from Brooks to the trust company was made without consideration and without intention to obligate the trust company to pay plaintiff's note, but was made solely to end Brooks' trusteeship, and that the clause in the deed whereby the trust company purported to assume said indebtedness was inadvertently inserted therein by the mutual mistake of the parties thereto through a mistake of the scrivener who prepared it; that said clause was inserted without consideration and is void, and that such purported promise was made without plaintiff's knowledge; that his interests were in no wise affected thereby, and that said purported promise was made without the authority or direction of the trust company, is *ultra vires* and void.

Plaintiff filed a reply denying each and every allegation of new matter in the amended answer.

The evidence disclosed that on January 1, 1920, H. D. Smith and wife owned the land in question, and on that day borrowed $10,000 from plaintiff through the Vandalia Banking Association. They executed their note to plaintiff for the sum of $10,000, made it payable at the Vandalia Banking Association and secured it by a deed of trust on the land. Thereafter, on January 18, 1921, Smith and his wife executed a note to the Vandalia Banking Association and secured it by a second deed of trust on the same land in the sum of $7,500. The amount of the second note was afterwards reduced to $5,500 by payments thereon and is referred to as the $5,500 note. On March 1, 1922, in consideration of one dollar, Smith and wife conveyed the land by warranty deed to John A. Brooks, subject to the $10,000 first deed of trust, also a balance of $5,500 due on the second deed of trust.

At the time of the execution of the $10.000 note and deed of trust on January 1, 1920, by Smith and his wife, Brooks was cashier of the Vandalia Banking Association. He continued in that position until 1923, when he resigned and became vice-president of a bank in Evanston, Illinois, which position he was holding at the time of the trial. The banking association became the trust company December 15. 1924. They are referred to frequently as "the bank." On April 1, 1926, the trust company passed a resolution authorizing its secretary "to procure deed to said farm to the Vandalia Trust Company subject to the first deed of trust for $10,000, and the $5,500 note of H. D. Smith be satisfied of record and the amount thereof to be added to our 'other real estate account.' " On April 2, 1926. Brooks and wife, by warranty deed, conveyed the land to the trust company.

The deed from Smith and wife to Brooks, executed March 1; 1922, did not contain any assumption clause, but the deed from Brooks and wife to the trust company, executed April 2, 1926. a little more than four years thereafter, contained the assumption clause upon which plaintiff's suit is founded. The deed from Smith and wife to Brooks had been kept by the trust company at all times, having been turned over by Brooks immediately after he received it in March, 1922. The deed of April 2, 1926. by Brooks and wife to the trust company, was prepared in the office of the trust company by Miss Bevan, a stenographer in the employ of the trust company. It was then executed by the parties, recorded and put away among the trust company's papers. Neither Mrs. Brooks nor Miss Bevan was called as a witness. but there was testimony for defendants to the effect that neither Will Daniel. secretary of the trust company, nor Brooks read the deed after it was prepared by Miss Bevan, and

that it was executed by the parties without knowledge that the assumption clause had been inserted therein.

The land was carried in the trust company's assets at a valuation of $10,000 in excess of plaintiff's deed of trust.

The trust company was authorized to acquire real estate, "Such as it shall purchase at sales, under judgments, decrees of liens held by it."

An inventory made by the Finance Commissioner showed the trust company assets were approximately $600,000.

Ed Harrelson testified that he lived on the land as a tenant in 1923, renting it from John A. Brooks; that they had no written contract, and he settled with Brooks, who was at that time assistant cashier of the banking association. He did not know who owned the farm, nor who got the funds from it.

Roley Middleton testified that he rented the farm from Brooks for three years. The first year he dealt with Brooks. Thereafter he dealt with Daniel. He did not know who owned the farm.

H. D. Smith, called as a witness for plaintiff, gave testimony to the effect that he sold the land to the banking association at a price of $15,500; that he made the deal with Brooks but got no money out of the transaction. He testified that Brooks:

"Was to pay them notes, the $10,000 and the $5,500 notes. That was an agreement entered into between me and Brooks. That is all I got for the land. After we made that agreement I executed the deed to Brooks."

The witness said he was never called on by Brooks or the banking association or the trust company to pay either of the notes; that prior to the time he deeded the land to Brooks he owed the banking association. In this connection he testified:

"I was trying to square off with them and pay them what I owed them. . . . The deed was made subject to the two deeds of trust, and after that I took no further interest in the matter and they never asked me after that to pay them anything. . . . I understood I was dealing with the bank, although I made the deed to John A. Brooks. I understood Brooks was acting for the bank because I owed the bank."

He further testified that nothing came to him out of the transaction except the cancellation of his debts, and that he "just squared with the bank, that is all."

Will Daniel, a witness for defendants, testified that he was for many years connected with the banking association, having been cashier and later vice-president; that at the time the deed was made by Brooks to the trust company he (the witness) was either vice-president or secretary thereof; that nothing was said about paying plaintiff's $10,000 note. Being asked how the deed from Smith came to be made to Brooks, he answered:

1180

"Well, in that way, why, we could continue to carry this $5500, without changing our records and we didn't care to put it in our 'Other Real Estate' account at that time."

He testified that they let Brooks carry the title and kept the $5500 under the deed of trust. Explaining this, he said:

"That deed to Brooks satisfied, so far as Smith was concerned the $5500. We carried it nominally but we didn't expect Smith to pay it, because it was carried in the name of Brooks."

He further testified that after the conveyance to Brooks by Smith and wife the bank held the land and got all the rents and profits. The witness said he was the one who discussed the transaction with Brooks and got the deed from Brooks to the trust company, and that he never told Brooks that the trust company would pay the $10,000 note. He testified that a stenographer employee of the trust company prepared the deed for him and Mr. Brooks; that she was acting for both of them; that he told her to prepare the deed "just like the other;" that she had the old deed before her and he just told her to prepare one conveying the property to the trust company. At this point he was asked:

"You didn't tell her then, to prepare or write the assumption clause that the bank would assume and agree to pay?"

He answered:

"I think not."

He said the bank paid all the interest on the loan and also paid the taxes every year.

John A. Brooks was called as a witness for defendants and testified that he had been with the Vandalia Banking Association for about eleven years prior to 1923. He was assistant cashier, and as such represented the banking association in procuring Smith's deed to himself for the bank. He said he did not pay anything to Smith for the farm; that the deed from Smith to him was taken to satisfy a debt that Smith owed the bank; that he took the title in his name for the bank for two reasons; that if title had been given directly to the bank, the bank would have to carry it as "other real estate" and that the $5500 note would have to be immediately cancelled; that the title was taken in him so the note would not have to be charged off, thus giving the bank time to sell the farm; that the idea was not to load up the "other real estate;" that Smith was to be no longer molested on his $5500 debt, and that by the transaction Smith had his $5500 debt virtually cancelled.

He further testified that he never did own the land and never claimed to be the owner; that he did not pay for it; that he got no revenue from the farm products or rents, and that as long as he remained in the bank it all went to the profit and loss account of the bank. He was asked:

"Did you and the bank or anybody for the bank, when you made that deed have any agreement or understanding that the bank was to assume liability on Mr. Robertson's note and pay it?"

He answered:

"None whatever, no sir."

He was also asked:

"Was it your intention from what was said and done between you and the bank, that you were merely turning them over the legal title subject to the encumbrance?"

And answered:

"That is right. I never paid any taxes on this land. I knew that the bank paid the taxes."

During recross-examination this witness, when asked if he had told Smith that either he or the bank would take care of the first deed of trust and not bother him about the second, answered:

"No sir; no Judge, I didn't. We told him we would take care of the $5500 debt; I would say, in conveying farms never to my knowledge has that question ever come up that we will say that you never have to pay the first mortgage; it goes without saying when you buy the farm you assume the mortgage. I would say definitely that I never said anything about paying the first mortgage."

Later on the witness was asked concerning that part of the last above quoted answer wherein he said: "It goes without saying when you buy the farm you assume the mortgage," and was asked:

"Q. You used the word 'assumed' a while ago. Did you mean 'assumed' or 'subject to?'"

He answered:

"'Subject,' I should have said, instead of 'assumed.'"

He was asked the direct question:

"You didn't tell him definitely that you would pay the $10,000 mortgage?"

And answered:

"No sir, absolutely did not."

The $7500 deed of trust which had been reduced by payments to $5500 was satisfied of record on April 5, 1926, four days after Brooks and wife made their deed to the trust company.

The trial judge filed a memorandum giving his reasons for the decision and judgment for defendants. The memorandum shows the trial judge found that when the deed from Smith to Brooks was executed there was an oral promise by Brooks to Smith which was binding on the bank to assume and pay the $10,000 note and the $5500 note. He held, however, that plaintiff could not recover on such an oral promise for the reason that his petition was not based on such oral promise, but was founded on the contract of assumption in the deed from Brooks to the trust company. The trial judge further held that the assumption clause in the deed from Brooks to the

trust company was invalid because Brooks was the bank and the bank could not contract with itself.

No request was made for a finding of facts, nor were any declarations of law asked for or given. Therefore, while the trial judge's memorandum cannot be treated as a special verdict, it nevertheless affords valuable aid in determining the basis on which his conclusions were reached.

From the judge's memorandum it appears that plaintiff based his claim on two propositions: First, that the trust company is liable by reason of the assumption of indebtedness contained in the warranty deed from Brooks to the trust company; second, that the trust company is liable by reason of a novation growing out of the warranty deed from Brooks to the banking association (Vandalia Trust Company).

These propositions were taken up in reverse order by the trial judge, who held that a novation had not been pleaded nor proved.

It is obvious from the summary of the pleadings and evidence which we have presented, that the trial judge was correct in his conclusion on plaintiff's contention as to novation. Novation is never presumed. It must be pleaded and must be proved, and the burden of proof rests on the party alleging the novation. To constitute a novation there must be an agreement between the creditor, his immediate debtor, and the intended new debtor whereby the proposed new debtor is accepted in the place of the original debtor in discharge of the original debt.

There is no evidence whatsoever in this case that plaintiff Robertson and Smith and wife agreed with Brooks or with the bank that the Smiths would be released from further liability, and that Brooks or the bank would be liable in their place. There is no evidence that plaintiff knew anything about the transactions between the Smiths and Brooks and the bank, hence there was no proof of novation. [Hicksville Handle Co. v. Herb (Mo. App.), 226 S. W. 63; Farmers Bank of Billings v. Oetker, 224 Mo. App. 664, 31 S. W. (2d) 568.]

The trial judge in his memorandum stated that the weight of the evidence was to the effect that when the deed was made from the Smiths to Brooks it was the understanding that the Smiths were to be relieved of the payment of the $5500 note and the $10,000 note. After a resume of the evidence to support this conclusion the trial judge found that the evidence was uncontradicted and conclusive that

"Brooks never owned the land or had the slightest interest therein except as an officer of the bank and acting as trustee or as conduit of title. . . . The proof is clear that Brooks was never in possession of the land, unless it be as agent for the bank. Then under these circumstances the assumption clause in the deed from Brooks to the bank would not give the bank a cause of action, because it.

was merely taking the title in its own name, whereas it had theretofore held the title in the name of Brooks, its agent or trustee. Brooks was the bank, and the bank could not make a contract with itself.''

After further discussion of the pleadings and the evidence the trial judge declared that if plaintiff was to recover, it must be upon the agreement made at the time of the deed from Smiths to Brooks, and held that plaintiff could not sue on one state of facts as constituting a cause of action, and recover on another; that the plaintiff had rested his case solely and alone on an alleged assumption of indebtedness agreement between Brooks and the bank, and having failed in proving that charge, he could not claim a recovery because of an agreement between the Smiths and Brooks. He accordingly rendered judgment for defendants.

The rule is well established that the finding of a trial court sitting as a jury will not be disturbed if there is substantial evidence to support it. [Jones v. Eaton, 307 Mo. 172, 270 S. W. 105.]

It is clear from the evidence that in taking the deed from the Smiths to himself, Brooks was acting for the banking association. While it is true the record title remained in Brooks from March 1, 1922, until April 2, 1926, nevertheless, during that time the bank was the real owner of the land under a deed from the Smiths in which no assumption clause appeared. Brooks positively and unequivocally disclaimed ownership of the land. The banking association and its successor, the trust company, were entitled to have Brooks transfer the land upon mere request at any time without being required to pay anything to him for the reason, which the evidence shows conclusively, that in taking title in his own name, Brooks was merely acting for the bank and had no other or different interest than that of a naked trustee, a mere holder of the record title.

This view is further supported by the undisputed evidence that the bank took possession of the land, collected the rents and profits, paid the taxes and paid the interest on the $10,000 note as it fell due.

Brooks was merely a trustee of a dry trust and the title, under the statute of uses, went through him ''like water through a sieve'' and became immediately vested in the banking association. [Blumenthal v. Blumenthal, 251 Mo. 693, 703, 158 S. W. 648.]

We are of the opinion that there was ample evidence to sustain the conclusion of the trial judge that ''Brooks was the bank.'' Such a finding necessarily means that plaintiff failed to sustain the allegations of his petition. Plaintiff, by his petition and his denial of the allegations of defendants' amended answer, squarely took the position that Brooks and his wife, *as the owners of the land*, conveyed it to the trust company on April 2, 1926, by the warranty deed which contained the assumption clause. The burden was on plaintiff to prove such charge. He wholly failed to prove it. On the con-

1184

trary, it clearly appears, as the trial court held, that Brooks was not the owner of the land but merely held the legal title for the banking association, and later for the trust company. The trust company was the real owner of the land, having taken possession thereof under a deed which contained no assumption clause, several years before the execution of the deed containing the assumption clause. To make a valid contract there must be at least two competent parties. In the case at bar the evidence shows there was but one real party to the so-called contract upon which plaintiff based his cause of action, and that party was the trust company. Under the law the trust company could not make a valid contract of any kind with itself, much less one whereby, without any consideration, it assumed the additional obligation to pay plaintiff's note in full. [13 C. J. 261, sec. 43; Watson Seminary v. County Court, 149 Mo. 57, 69, 50 S. W. 880.]

The amended answer of defendants alleged that Brooks, by arrangement between the parties, had taken the title to the land from the Smiths solely as a trustee for and on behalf of the trust company and, "as merely holder of the naked legal title in trust for said Vandalia Trust Company, said Vandalia Trust Company being the actual *bona fide* and legal owner of said lands at all times from the date of said deed to said Brooks . . ."

Plaintiff filed a reply denying the above allegation and thus put it squarely in issue. In this State of the pleadings, in view of the evidence which we have heretofore summarized, the court could not properly render judgment for plaintiff for the reason that the evidence, instead of sustaining plaintiff's allegations, clearly sustained the allegations of defendants' amended answer. It thus appears that plaintiff deliberately chose to base his claim upon the assumption clause in the deed made in April, 1926, between Brooks and wife and the trust company, but failed to sustain the issue which he himself raised.

While it is true Smith, testifying for plaintiff, said there was an oral agreement between himself and Brooks whereby Brooks, acting for the bank, promised to take care of both the $10,000 note and the $5,500 note, Smith's testimony on this point (which was emphatically denied by Brooks) cannot avail plaintiff for it must be remembered that he did not plead and rely on the oral agreement. He pleaded an assumption clause appearing in a deed between Brooks and wife and the bank, made in April, 1926, whereas, the oral agreement which Smith's testimony tended to prove was made between Smith and wife and Brooks in March, 1922.

No rule of law is more firmly established that the one in which it is declared that a party to an action will not be permitted to plead one state of facts as his cause of action and recover on a different state of facts. [Mark v. Cooperage Co., 204 Mo. 242, 262, 103 S.

W. 20; Henry County v. Citizens Bank, 208 Mo. 209, 225, 106 S. W. 622; Phillips v. Thompson, 225 Mo. App. 859, 35 S. W. (2d) 382; Dimick v. Snyder (Mo. App.), 34 S. W. (2d) 1004.]

We hold that there was ample evidence to sustain the findings and judgment of the trial court and there is no ground for interference on the part of this court. The judgment is accordingly affirmed. *Becker, P. J.,* concurs.