PEOPLE'S BANK OF BUTLER, a Corporation, by O. H. MOBERLY, Commissioner of Finance of the State, in charge thereof, v. C. A. ALLEN.—125 S. W. (2d) 829.

Division One, March 8, 1939.

*John A. Silvers, J. R. Nicholson, Leslie M. Crouch* and *L. M. Crouch, Jr.,* for appellant.

*H. E. Sheppard* for respondent.

HAYS, P. J.—This is an action in replevin brought by the Commissioner of Finance (O. H. Moberly) of the State of Missouri, and presently maintained by his substituted successor in office (R. W. Holt), in charge of the People's Bank of Butler, in process of liquidation, for the recovery of certain assets of the bank which are described in the petition. It is admitted that the described assets are now held by the appellant in the capacity of successor trustee in place of one Alva Deerwater (now deceased) under the hypothecation of said assets as made by the Board of Directors of said bank to secure themselves from liability resulting to them as sureties of the bank on its bonds given the county of Bates and the city of Butler, respectively, both of which had selected the bank as depository for aliquot parts of the public funds of the county and city respectively. Each bond was in the sum of $24,000. The bond given by the People's Bank was executed by that institution as principal, and each and every one of its directors as sureties, in manner and pursuant to authorization as follows:

The bank directors in meeting assembled, in passing the resolution authorizing the bank's bond made an order that the president and the cashier "assign, set apart and maintain as security to the sureties on the bond (all members of the board) bills receivable belonging to said bank in a sum not less than $40,000 nor more than double the amount of the penalty of said bond, for the purpose of securing said bondsmen against loss by reason of their obligation on said bond; said president and cashier are further authorized and empowered, from time to time, to take up any of the bills receivable so put up as security and to substitute other bills receivable in place of any so taken up; all security so put up to be returned to the bank when said bondsmen are released from liability on said bond. Alva Deerwater is named as trustee to receive and hold said collateral security for the benefit of the sureties on said bond."

In the order of the county court designating the bank as depository it was further provided that the designated depository furnish a bond in proper form for the amount above stated, "to be signed by not less than five owners of unencumbered real estate of value equal in amount to the bond, or more."

Only two of all the directors could meet this requirement when the bond was presented. The county court approved and accepted the same.

Said notes were all taken out of the possession of the bank before the assets of the bank were turned over to the Commissioner of Finance and copies of them substituted in the bank's files. All the original notes so taken out were held and are now retained by the appellant.

In all published statements of the condition of the affairs of said bank prior to the Commissioner of Finance's taking over of the bank, said assets were included as assets of the bank.

When the bank thereafter was placed in liquidation Bates County had there on deposit $9,134.39. Suit was brought therefor by the county and judgment was rendered for said sum against the bank and said members of the Board of Directors as sureties on the bank's bond. The greater part of said judgment has been paid from the assets of the bank, leaving, however, a very substantial remainder due and unpaid. No part of the judgment has been paid by the sureties, and for the remainder the county has filed a preference claim, now pending.

A like condition of affairs exists with respect to the city of Butler and its depository, the Farmers Bank and the city's unsatisfied judgment for $4,935 against the Farmers Bank; and also with respect to a number of townships of the county, which operates under the Townships Organization plan.

It is claimed, and not disputed, that the bank directors and the appellant acted in the premises, after consulting legal counsel, in good faith and in the belief that their plan and their action thereunder would be lawful and to the interest of the bank.

The judgment of the trial court was in favor of the plaintiff. Hence this appeal by the trustee.

■ The question here presented is whether the course so pursued by the bank, acting through its board of directors, was *intra vires,* as contended by the appellant, or whether it was *ultra vires* and void as contended by respondent.

It is contended, first, that the policy of Missouri as gathered from the Constitution and the statutes, requires security for public funds; and, second, the bank had the right to pledge its assets to secure such public funds and the county and the city had the right to take these pledges in *addition* to any statutory requirements for bond. As supporting the second proposition the following are authorities cited from this jurisdiction: Consolidated School District No. 4 of Texas County v. Citizens' Savings Bank, 223 Mo. App. 940, 21 S. W. (2d) 781; French, Commissioner of Finance, v. School District No. 20 of Scott County (Mo. App.), 7 S. W. (2d) 415; Huntsville Trust Company v. Noel, 221 Mo. 749, 12 S. W. (2d) 751; Marion County v. First Savings Bank of Palmyra, 336 Mo. 675, 80 S. W. (2d) 861.

These cases, while similar among themselves, are not similar to the case at bar on the facts. They apply the doctrine of "trust *ex maleficio*" as between the depository and the depositor. For instance, where the depository had failed to qualify in that it gave a bond in an amount less than required by the governing statute (Marion County case, supra). No specific pledging of assets to indemnify sureties on the depository's bond was involved. Moreover, the assets here involved were not pledged to the county or city "in addition to any statutory requirement" or in any other manner. The bonds conformed to the then governing statutes (as case was tried in 1936), Revised Statutes 1929, Sections 6794 and 12187 which required:

The first section: ". . . it shall be the duty of the banking corporation . . . so elected to execute a bond payable to the city . . . with not less than three solvent sureties, who shall own unencumbered real estate in the state of as great value as the amount of said bond. . . ."

The latter section provides: ". . . it shall be the duty of each successful bidder (as depository) to execute a bond payable to the county . . . with not less than five solvent sureties, who shall own unencumbered real estate in this state of as great value as the amount of said bond, or with a surety or trust company authorized by the laws of this state to execute bonds as surety: . . . or in lieu of real estate as security bonds of the United States or of the State of Missouri" to be "deposited as the court may direct. . . ."

What has been said above applies likewise to appellant's next contention that the assets that were hypothecated to him and to his predecessor in the trust arrangement were held in trust for the obligees of the bonds, i. e., the county and the city. The rule invoked does not apply where the agreement is, as here, personal to the surety for his indemnity only, and not for the discharge of his liability, courts in cases in the latter class holding that the creditor acquires no equity to enforce the covenant. [21 R. C. L., p. 1094, sec. 132.]

Nor do we think the appellant's next contention has any merit. He asserts that the bank had a right to pledge its assets for the purpose of borrowing money, and as the sureties on the bond were acting in good faith lending their credit to the bank whereby the bank was benefited and hence the sureties on the bond could lawfully be secured by assets of the bank. The question of whether the bank had the power to pledge its assets for money borrowed is not an element of the case—it did not do so. True, ordinarily the making of a deposit in a bank creates the relationship of debtor and creditor between the bank and the depositor. The receipt of deposits is the normal and essential function of a bank; its capital is only a nucleus. It is too plain for more than a passing comment that, in the commercial sense, borrowing by a bank is very generally understood as being quite different from receiving general deposits—save in the one particular just noted.

█ The last proposition advanced by the appellant is that if the trust arrangement for hypothecation of assets here in question was *ultra vires,* then the bank, since it received all the benefit therefrom, cannot recover the possession without repaying the benefits obtained. The leading case cited in support is Farmers & Traders Bank v. Harrison et al., 321 Mo. 815, 12 S. W. (2d) 755. That was an action on bond signed by the bank cashier and five of the nine directors as individual sureties to secure general depositors. The bond was held not absolutely void as contrary to public policy, so as to prevent recovery on the contract under the theory of estoppel, *since no part of the bank's assets was divested,* and the only effect of the bond was to express the contract and give the depositor advantage of personal securities. It is apparent this authority lends this appellant no support.

In the present case a large portion of the bank's assets was divested, and devoted to indemnifying against loss all the directors. There can be no application here of the rule invoked by appellant, to-wit: "A creditor is entitled to enforce for his own benefit any securities which the principal has given his surety by way of indemnity." [R. C. L. citation, supra.] The agreement of the bank for the hypothecation of the assets to indemnify the directors did not rise to the dignity of a contract. This is the established rule: "Since a person cannot enter into an agreement with himself, nor maintain an action against himself, it follows that two or more parties are essential to every contract. One cannot enter into a contract with himself or with himself and others, and even though he acts in different capacities. . . ." [13 C. J., pp. 261-262, sec. 43, citing in footnote Watson Seminary v. Pike County Court, 149 Mo. 57, 50 S. W. 880, *inter alia.*] Notwithstanding their good faith in the premises, the directors were dealing with themselves and safeguarding their own protection as against creditors of the bank generally whose protection was correspondingly lessened; and by the published statements of the former it may be assumed the latter were misled to rely unduly upon the soundness of the bank.

A well considered case on all fours with the instant case is Frankford Exchange Bank v. McCune (Mo. App.), 72 S. W. (2d) 155. We have reached the same conclusion that was reached there.

We are of the opinion that the judgment of the trial court should be sustained. It is so ordered. All concur.