LAURA GAUME WOLF, EXTX., APPELLANT, v. GEORGE WUELLING ET AL., RESPONDENTS.—130 S. W. (2d) 671.

Kansas City Court of Appeals.   May 8, 1939.

*Marion Garstang, Leslie B. Hutchison, James Booth* and *James L. Anding* for appellant.

*H. Balken Bush* for respondents.

SHAIN, P. J.—This is a suit upon a negotiable promissory note in the sum of $1175.25 made payable to the Peoples Bank of Chamois, Missouri, and indorsed in blank as follows, to-wit: "Peoples Bank of Chamois P. J. Paulsmeyer Cashier." This action is brought by the executrix of the estate of Edward Gaume, deceased, and against the signers of said note.

Plaintiff's cause of action is stated as follows:

"Plaintiff for cause of action against said defendants states that the defendants by their certain promissory note date August 29, 1934, promised, for value received to pay to the order of the Peoples Bank of Chamois, the sum of Eleven hundred seventy-five and 25/100 Dollars, on demand, and if not demand be made, then one year after the date thereof, with interest thereon from date at the rate of six per centum per annum, compounded if not paid annually when due; that, in and by the terms of said note the said defendants promised to pay an additional ten per centum of said amount, in case the said note was placed in the hands of an attorney for collection.

"That said note was by the Peoples Bank of Chamois, by proper endorsement duly sold and transferred for value, to the estate of Edward Gaume, the said promissory note, and that the plaintiff is now the holder of said note in due course.

"Plaintiff further states that there remains due and unpaid on said note, the sum of one thousand one hundred seventy-five and 25/100 dollars ($1175.25), together with interest thereon from date, compounded at the rate of six (6) per centum per annum, together with an additional ten per cent. thereof as attorney fees, as provided in and by the terms of said note; that demand has been made of the defendants for the payment of said note, but that defendants have failed, refused and neglected to pay the same, and still fail, refuse and neglect so to do."

Judgment is asked for principal, interest and attorney fees.

The joint and separate answer of defendants' George and Louise Wuelling are as follows:

"Come now George Wuelling and Louise Wuelling, and deny each and every allegation contained in plaintiff's Petition.

"George and Louise Wuelling, defendants, for further affirmative defense state:

"That the note sued upon was given by George and Louise Wuelling without any consideration.

"Wherefore, defendants, George and Louise Wuelling, pray the Court that the plaintiff take nothing from them on Plaintiff's Petition, that they go hence without day, and recover their costs in this behalf expended."

The separate answer of defendant Henry Wuelling is as follows:

"For further Answer Defendant Henry Wuelling as affirmative defense states:

"First: That he signed the note sued upon in Plaintiff's Petition as an accomodation maker to accommodate the payee of said note, The Peoples Bank of Chamois, at the special instance and request of the agents, servants and employees of said Peoples Bank of Chamois, a banking corporation, who represented to Defendant Henry Wuelling that the bank was in a failing condition and needed something to show the Bank Examiners who were expected any day, that the bank was making progress towards setting the bank in order, and that Defendant Henry Wuelling would never be called upon to pay any part of said note.

"That Defendant Henry Wuelling received nothing of value for signing said note, nor was anything of value given by the Peoples Bank of Chamois in return for said note, and that the same is wholly without any consideration.

"That Defendant Henry Wuelling signed said note upon the fraudulent representations of the agents and servants of the Peoples Bank of Chamois.

"Second: That P. J. Paulsmeyer had no authority to sell or hypothecate the note sued upon in Plaintiff's Petition, and that he well knew that the note was not given for anything of value, and that the same was merely an accommodation of the payee in said note, the Peoples Bank of Chamois, and that the same was not to be presented for payment.

"Third: That the estate of Edward Gaume is not the legal holder of said note, and the said estate has no title or interest to or in said note; that the administrator of the estate of Edward Gaume had no authority to invest the funds belonging to said estate in the note sued upon, and P. J. Paulsmeyer was cashier of the Peoples Bank of Chamois at all times he was the lawfully appointed administrator ad litum, and had full knowledge of the informaties of the note sued upon, and

had no authority to sell or transfer any assets of the Peoples Bank of Chamois to the Gaume estate and could not.

"Wherefore, Defendant Henry Wuelling having fully answered, prays the Court that the defendant take nothing on his Petition from him that he may go hence without day and recover his costs in this behalf expended."

Plaintiff files general denial to each answer.

This cause was before us for review at the March Term, 1938, of this court. At the former trial in the circuit court, judgment had been for plaintiff and defendant appealed. The judgment had at former trial was reversed and cause remanded. Our opinion or former review is reported in 112 S. W. (2d) 357.

Retrial was had in the Circuit Court of Osage County, Missouri, in June, 1938. The trial was before a jury resulting in a verdict for defendants. Judgment was entered in accordance with the jury verdict and plaintiff duly appealed.

Due to the death of a party defendant and change in representative of estate, changes in personnel appear. The present status is explained by stipulation as follows:

"It is stipulated and agreed by and between the parties hereto that Edward Gaume departed this life testate at Osage County, Missouri, on the 20th day of May, 1932; That by his last will and testament his wife Laura Gaume, now Laura Gaume Wolf was named as executrix of his will and was thereafter on the . . . day of Aug., 1932, duly qualified as such executrix; That pending contest of said will, Paul J. Paulsmeyer was duly appointed and qualified as Administrator of said estate pendente lite on the 9th day of Sept., 1932; That said Paul J. Paulsmeyer departed this life by his own hand, testate at said County of Osage on the 29 day of Dec., 1935; That upon the death of said Paulsmeyer one H. M. Lueckenhoff as public administrator under the orders of the Probate Court of said County on the 9th day of May, 1936, took charge of the estate of Edward Gaume deceased and continued to administer said estate until the 23rd day of March, 1937, on which last mentioned date he was by the Probate Court of said County discharged as such administrator and said Laura Gaume Wolf reinstated as executrix of said estate and is now substituted as plaintiff in lieu of said Lueckenhoff.

"That since the commencement of this action defendant Henry Wuelling has departed this life intestate at said County of Osage, and his death suggested and this cause revived against his administrator George Wuelling who has been duly appointed and qualified as administrator of the estate of Henry Wuelling by the said Probate Court on the 14 day of March, 1938, and is now acting as such; either party may offer such addition evidence as may be competent and revelvant.

"That the will of said Edward Gaume was contested by his son, Walter Gaume, which contest resulted in a judgment of the Circuit

Court of Osage County, Missouri admitting said will to probate in solemn form; That from said judgment, an appeal was duly allowed to the Supreme Court of Missouri and there such proceedings had as resulted in an affirmance of said judgment on the 11th day of March, 1937; that said Venona Paulsmeyer was duly appointed and qualified as executrix of the estate of Paul J. Paulsmeyer on the — day of February, 1936.

"LESLIE B. HUTCHISON,

"JAMES BOOTH,

"J. L. ANDING,

"Attorneys for Laura Gaume Wolfe.

"H. BALKENBUSH,

"Attorney for defendants Wuelling."

The record herein discloses that prior to the bringing of this suit the Peoples Bank of Chamois had failed and its assets were in the hands of receiver for liquidation. During the progress of the trial, the admission is made that the note in issue is not listed as an asset of the defunct bank.

A motion to dismiss this appeal has been filed in this court and is in words and figures as follows:

"Respondent submits that appellant's purported statement wholly fails to give the court a clear and concise statement of the material facts of the case, and that appellant's statement does not fairly state the evidence adduced in the trial of the cause. And therefore the appeal should be dismissed."

In our consideration of the above motion we have cognizance of the environments out of which the issues in this case arose, as disclosed by our former review and by the record now before us. The issues herein arose out of a great financial depression wherein drowning men in a financial whirlpool were grabbing at straws. In this period men of previous honest habits became dethroned of reason and resorted to camouflage, intermingled assets, and resorted to false entry bookkeeping and thereby brought about entanglements which have presented almost unsurmountable difficulties to court and juries to attempt to unravel. Add to this the suicide of the perpetrators and the consequent closing of the mouths of witnesses and we have a picture of the situation presented herein. Such gives rise to greater detail in statements wherein these entanglements are involved.

While the statement as found in the brief of the appealing plaintiff is probably longer than required and contains matters not necessary and also may follow a too common fault of stating facts most favorable to the losing party, still by eliminating parts as surplusage there is presented a fair index to the issues. For reasons stated, the motion to dismiss appeal is overruled.

OPINION.

We will continue to designate appellant as plaintiff and respondents as defendants.

Plaintiff makes assignment of errors as follows:

"1

"The Court erred in refusing to give to the Jury at the request of plaintiff, her Instruction No. 2 directing a verdict for plaintiff at the close of all the evidence.

"2.

"The Court erred in giving to the Jury at the request of defendants, their Instruction No. A.

"3.

"The Court erred in giving to the Jury at the request of defendants, their Instruction No. B.

"4.

"The Court erred in giving to the Jury at the request of defendants, their Instruction No. C."

Supplementing the above, the plaintiff copiously follows with points and authorities which incite to lengthy discussion. All of the points presented, conceding facts assumed, present prime principles of law supported by many citations. We conclude to review from assignments as presented with points and authorities discussed as occasion demands.

The defendants, in brief filed, counter with points and authorities that will be noted and given consideration in the course of the opinion.

The plaintiff is urging that a directed verdict should have been given. From a careful study of the record in this case, we conclude that the plaintiff is not entirely consistent in urging such claim.

It is clearly shown that the note in issue was not an asset of Edward Gaume when he died. It is further shown that said note did not become an asset of the Gaume estate during the first period of administration of the present plaintiff. The asserted possession and ownership of the note, and as to when and how acquired, is shown to have been treated by plaintiff in the trial as presenting issues of fact. We conclude that there is reason for the position so taken. Such right as the Gaume estate has as to possession and ownership comes through and by the acts of P. J. Paulsmeyer, the cashier of the Peoples Bank, while he was acting as administrator *pendente lite* of the estate of Edward Gaume.

During the pendency of administration and while P. J. Paulsmeyer was acting administrator, two notable events occurred. First, the bank to which the note is purported to have been given and of which Paulsmeyer was cashier, failed and was taken over for liquidation. Second, P. J. Paulsmeyer committed suicide. There is no showing that the note had ever been listed as an asset of the Gaume estate prior

to the happening of the above events, nor is there showing of possession or claim of ownership prior thereto.

The plaintiff herein evidently realizing that there was a burden to meet, under such situation and the pleadings, proceeded in the trial in a very methodical way to meet the burden and even before offering the note in evidence placed witnesses upon the stand to prove the facts and circumstances upon which right of possession and title is claimed. Further, as the note shows as payable to the Peoples Bank of Chamois and only shows as indorsed in blank as follows, "Peoples Bank of Chamois, P. J. Paulsmeyer, Cashier," the plaintiff in support of claim of title introduced witnesses to testify that the signature was genuine. We conclude that the court did not commit error by refusing the directed verdict.

To substantiate right of possession and ownership of the note in issue, the plaintiff called as a witness Venona Paulsmeyer, the widow of and executrix of the estate of P. J. Paulsmeyer, deceased. The following questions and answers are shown in Mrs. Paulsmeyer's testimony, to-wit:

"Q. State your name to the Jury. A. Venona Paulsmeyer.

"Q. And where do you live, Mrs. Paulsmeyer? A. Chamois, Missouri.

"Q. Are you the widow of P. J. Paulsmeyer? A. I am.

"Q. When did your husband die, Mrs. Paulsmeyer? A. December 27, 1935.

"Q. Was you afterwards appointed administrator or executor of your husband's estate? A. I was.

"Q. Do you recall when that was, about? A. Well, it was some time in January, I think I don't know whether it was the first of January or the last of December, shortly after he died though.

"Q. Mrs. Paulsmeyer, sometime after you were appointed executor of your husband's estate, I will ask you, if you, in company with anyone, went to the Peoples Bank of Chamois for the purpose of trying to locate the Gaume papers? A. I did.

"Q. Just tell the jury who you went with, Mrs. Paulsmeyer? A. Mr. Garstang."

. . . . . . . .

"A. I went down to the Peoples Bank of Chamois with Mr. Kiethley who was in charge of the assets of the Peoples Bank of Chamois, and Mr. Garstang.

"Q. Which Mr. Garstang? A. J. R. Garstang.

"Q. Very well. A. And these deposit boxes were placed in a file, and of course, I had in my possession after a long search I had found the key that belonged to that box.

"MR. BALKENBUSH: Now then, I ask that be stricken out, that is purely a conclusion of the witness. She said, 'this box;' she hasn't shown any box.

"THE COURT: Overruled.

"MR. HUTCHISON: Well, tell what you did, Mrs. Paulsmeyer.

"A. The lady in charge of the bank at that time went into the vault, and the box—they have what we call a key that opens a certain division of the deposit boxes, and they also have a duplicate key to this box.

"Q. Which box? A. The Gaume box.

"Q. All right. A. And she went into the vault and Gaume box was opened and brought in front and in the presence of Mr. Garstang and Mr. Kiethley and myself, Mr. Kiethley, with the bank in charge, opened it up, and all of the papers, including that note, were in that box.

"(Plaintiff's Exhibit B so marked by the reporter for the purpose of identification.)

"Q. I now hand you Plaintiff's Exhibit B, and have you to look at it, and tell whether or not that was found in the box when you opened it, or it was opened in your presence. A. Yes, sir.

"Q. Now, can you tell the Jury whether or not there was any papers in that box other than papers that belonged to the Gaume estate? A. There was not.

"Q. You say there was not? A. There was not.

"Q. Whereabouts did you find the key Mrs. Paulsmeyer, that you have been testifying about? A. It was in a dresser drawer at home.

"Q. Whose home—your home? A. Yes, in my home.

"Q. Did that key have a number on it? A. It did.

"Q. Tell the Jury whether or not the box had a number on it. A. Yes, sir; it corresponded, that is the way we found the box. The number of the key corresponds with the box that the key opened, it won't any other box, you can't open any other box only the key that corresponds to the number that is on the box.

"Q. Now, Mrs. Paulsmeyer, you are familiar with your husband's signature, aren't you? A. I am.

"Q. I will have you to look at Plaintiff's Exhibit B and tell the Jury whose signature that is on the back of the note. A. Well, that is his signature.

"Q. Whose? A. That is Paul Paulsmeyer's.

"Q. Your husband's? A. P. J. Paulsmeyer's, yes.

. . . . . . .

"MR. HUTCHISON: That was in your home, wasn't it? A. Yes sir; that was in my home.

"Q. Now, up until the death of Paulsmeyer, did anybody live in your home except you and P. J. Paulsmeyer? A. No, sir.

"Q. What room did you find this in? A. In the bed room upstairs where he kept his belongings.

"Q. Now, did anybody else occupy that room except P. J. Paulsmeyer and yourself? A. No, sir.

"Q. Anybody keep anything in there, or any of those drawers except you—except P. J. Paulsmeyer? "A. No, sir.

. . . . . . .

"Mr. Hutchison: Now, after you found this note, what did you do with it, Mrs. Paulsmeyer? A. Well, all of these papers were put back into this Gaume estate, and Mr. Kiethley took it, and it was placed in the bank, the newly opened bank, the Bank of Chamois, in another building, placed in their vault.

"Q. And was that the last you saw of it until the suits were brought? A. Well, until I finished my administration, but I never had the box in my possession only when somebody was with me.

"Q. You turned the note over when you got through with it, to Mr. Lueckenhoff, the administrator of the Gaume estate? A. Oh yes.

"Q. Do you recall about when that was, Mrs. Paulsmeyer? A. No, I don't.

"Q. It was sometime after you found it down there in the bank? A. Yes sir, I think Nilges was before Lueckenhoff.

"Q. It was prior to the February term, 1937, of this court, was it not? A. Oh, yes.

Plaintiff placed upon the stand Mr. Lueckenhoff, former administrator pending will contest. This witness testifies to having received the note from executor of P. J. Paulsmeyer's estate while he was in charge of the Gaume estate. The following questions and answers appear in the testimony of this witness, to-wit:

"Q. Did you have any conversation with them about the note? A. Yes sir.

"Q. About the payment of this note? A. Yes sir; I notified them that the note was in my possession and for collection, and they met me down here to discuss the paying of this note, and we were talking and Mr. Wuelling proposed that if I would take in—

"Mr. Balkenbush: Now, I object to that statement, this testimony shows they were talking compromise.

"The Court: Overruled, oh no.

"Mr. Hutchison: Tell what he said, as near as you can.

"A. Proposed if I would take in a certain farm which there was a small mortgage against, if I would take that subject to the mortgage, they would take the note in exchange for it.

"Q. And what did you tell them? A. Well, I told them I couldn't do that as administrator."

A. A. Schmoody, cashier of the United Bank of Chamois, as a witness for plaintiff testified that the indorsement on the note was in the handwriting of P. J. Paulsmeyer.

Tony Lock, Circuit Clerk and Recorder of Osage County, was called by plaintiff and produced the inventories of the closed Peoples Bank filed in his office September 25, 1935. While this witness was

on the stand, admission was made that the note herein in issue was not listed as an asset of the Peoples Bank and immediately after such admission was made the note was offered and admitted in evidence without objection. This witness further testified that there was a pending claim in the circuit court by administratrix of the Gaume estate against the Peoples Bank for the note in issue. The above witness further testified to a deed of trust and a $2000 note given by George and Louise Wuelling to the Peoples Bank.

Concerning the above, the following questions and answers appear:

"Q. Has that deed of trust been released? A. Yes sir.

"Q. Does your record show by whom? A. It was released by J. F. Sullentrop or by his deputy, Mary Bradly, signed by E. M. Zevely as assignee."

Release is shown as of September 5, 1934.

At the close of the testimony of Mr. Lock, the plaintiff rested.

On behalf of defendants, George Wuelling, a defendant, took the stand. This witness was not permitted to testify to the direct negotiations as between himself and P. J. Paulsmeyer, deceased. However, the record discloses that the witness was permitted to testify as to the $2000 note referred to above and when being questioned as to the $2000 note, the following questions and answers appear:

"Q. Is this the only money you ever got from the Peoples Bank of Chamois, this two thousand dollars? A. Yes sir.

"Q. Did you ever get anything else of value? A. No sir.

"MR. BOOTH: That is objected to again, Your Honor, it is indirectly testifying to his contract with Paulsmeyer.

"THE COURT: Not necessarily, overruled."

Defendant called Reddick O'Brien, state counsel for the Home Owners Loan Corporation. O'Brien testified that on September 29, 1933, George Wuelling, a defendant herein, made application to H. O. L. C. for a real estate loan. It is disclosed that the H. O. L. C. under an arrangement with the Peoples Bank of Chamois took over the real estate loan of George Wuelling for $2000, referred to above, under the provision of the H. O. L. C. act, and that the deed of trust to secure same was released of record. It is disclosed that after payment of taxes and expenses that the Peoples Bank of Chamois received $1104.20 in bonds as growing out of this transaction.

George Wuelling was called by defendants for further direct examination, and the following questions and answers are shown:

"Q. Now, Mr. Wuelling, that day that you were in the bank and that note that they are suing on for $1175—did Herbert Mertens tell you why he wanted that note? A. To straighten out the accounts, he didn't exactly say why.

"Q. Did you get any money for that note that day? (Objection) A. No."

Mr. Wuelling, in referring to the testimony of Mr. Lueckenhoff,

*supra*, stated that he and Lueckenhoff had attempted to compromise as to the note in issue. In the examination of Mr. Wuelling, the following is shown:

"MR. BALKENBUSH: Now, Your Honor, a matter of compromise cannot be gone into. Mr. Lueckenhoff said it was an admission to pay, this man has a right to his version of it.

"THE COURT: But he has no right to put his construction on whether it was a compromise or not. He can tell what was said and done.

"Q. Did you try to settle this matter with Mr. Lueckenhoff before this suit was brought? A. Yes sir.

"Q. What did you offer to do? A. I had a little farm at that time across from Chamois, and in order to keep my brother Henry out of trouble—

"MR. BOOTH: That is objected to, what he did in order to keep his brother out of trouble, self-serving declaration, and opinion and conclusion of the witness.

"THE COURT: Yes.

"MR. BALKENBUSH: Had Mr. Lueckenhoff threatened to sue at that time? A. I think so.

"MR. BOOTH: That is objected to as irrelevant and immaterial.

"THE COURT: Overruled, I think he said he had."

Based upon the showing of the record, *supra*, we conclude that the testimony of Mrs. Paulsmeyer, Mr. Schmoody and Mr. Lueckenhoff and the note in evidence makes a submissible case under the allegations of plaintiff's petition. As to the above, the defendants urge that P. J. Paulsmeyer was acting in a dual capacity and that as two parties are required to a contract that, therefore, conceding the facts as testified to by Mrs. Paulsmeyer and Mr. Lueckenhoff, the whole transaction was invalid.

There are situations wherein the above contention has application. One holding securities in trust and at the same time being the representative of another, such as a cashier of a bank, is prohibited from conveying the securities held in trust to the bank or other interest he represents. [Robertson v. Bank of Vandalia, 66 S. W. (2d) 193.]

We conclude that there are no facts shown in this case that call for the application of the above principle. The undisputed evidence in this case is that the note was found in a lock box containing papers of the Gaume estate. The note is not even listed as an asset of the Peoples Bank and the representative of P. J. Paulsmeyer's estate makes disclaimer of ownership and as all the evidence is that the signature indorsing the note is genuine, defendants are not in a position to urge the point.

Both plaintiff and defendants urge points based upon the evidence concerning the transaction as to the $2000 indebtedness and trust deed that was taken over by H. O. L. C. We conclude that there is

no showing that supports a contention made by the plaintiff that the difference between the face value of the $2000 note and the amount received by the bank in said transaction constituted consideration for the note in issue. We further conclude that there is no evidence connected with the $2000 note transaction that justifies the claim of defendants that "the note sued upon was procurred by H. C. Mertens and P. J. Paulsmeyer, Vice President and Cashier of the Peoples Bank of Chamois, in the commission of a felony under the Federal Statutes."

Summarizing—there is testimony that the note herein sued upon was found among papers of the Gaume estate in "the Gaume box" and that Mr. Kiethley, in charge of the assets of the Peoples Bank of Chamois, was present when the box was opened. Further, there is the testimony of two witnesses that the indorsement on the note was in the handwriting of P. J. Paulsmeyer, cashier of the bank. There is an admission that the note is not listed as an asset of the bank. Further, the representative of the P. J. Paulsmeyer estate made disclaimer of ownership and turned the note over to the representative of the estate who succeeded P. J. Paulsmeyer. The note was duly introduced in evidence without objection. There is no allegation to the effect and no testimony of the import that the note was not duly indorsed and placed as an asset of the Gaume estate before maturity of the note. The note upon its face purports value.

The admitted facts as stated in above summary are conclusive. The oral testimony of Mrs. Paulsmeyer and Mr. Schmoody, although not contradicted by other testimony, are subject to the belief or disbelief of the triers of the fact.

We conclude that if the testimony of Mrs. Paulsmeyer and Mr. Schmoody be found to be true, then such testimony when taken with the admitted facts, the pleadings and the showing of the note in evidence makes a conclusive case for plaintiff and if said oral testimony be accepted as true, no other result can rightfully follow than a verdict for plaintiff. However, the verdict of the jury was for the defendant and it is not within the province of this court to disturb the verdict and judgment had in the circuit court unless it be found there was error in the instructions by way of misdirection of law or the inclusion of issues not presented by the pleadings and evidence.

Before taking up the question as to instructions, we here call attention to the three affirmative defenses made by answers filed. First, failure of consideration; second, fraud in procurement; third, affirmations that plaintiff is not legal holder and has no title or interest in the note.

As to the second affirmative defense, there is no evidence shown in the record from which fraud in the procurement can be inferred as against the plaintiff.

The third affirmative defense is contained in the answer of Henry Wuelling, under subhead "Second" and "Third," *supra.* The

1160

third defense, it will be noted, is based on assumptions of law and allegations of purported facts that require evidence in support.

As to the assumption of law as to P. J. Paulsmeyer's authority to sell and plaintiff's ability to acquire, we have resolved same against defendants in our presentation above. As to all allegations of purported facts contained in second and third subheads, the defendants have offered no evidence from which said asserted facts can be inferred.

With the above eliminated, the defendants are left only issues under general denial and on affirmative plea of failure of consideration.

We have outlined, *supra*, a situation that we conclude distinguishes the issues herein from the ordinary case where a negotiable note indorsed in blank is in possession of a plaintiff and introduced in evidence and supported by evidence that the indorsement is regular and in the handwriting of the party having the authority to indorse. The fact that the note in question was not an asset of Edward Gaume, deceased, in his lifetime, when taken with facts and circumstances disclosed by evidence set forth above, places a burden upon plaintiff to present facts from which it can be reasonably inferred that the plaintiff is in possession with title.

We have clearly stated above our conclusion that the testimony of Mrs. Paulsmeyer and Mr. Schmoody, if accepted as true, meets the burden.

Having stated our conclusion as to the issues involved, it follows that we conclude that the instructions to the jury must correctly state the law as applicable to such issues and within such issues.

Error is assigned to the giving of defendants' Instruction A. The instruction reads as follows:

"The Court instructs the Jury that if you find and believe from the evidence that the Gaume estate obtained possession of the note sued upon in a transaction between the Peoples Bank of Chamois and the administrator of the Gaume estate, if you so find, and also find that in that transaction that, P. J. Paulsmeyer attempted to act in the transaction as cashier of the Peoples Bank of Chamois, and also at the same time attempted to act in said transaction as the administrator of the estate of Edward Gaume, and further find that no other person acted in the transaction for either the Peoples Bank of Chamois or the Gaume estate, you will find your verdict for all the defendants."

We conclude that above instruction is in error for reasons that are clearly set out, *supra*.

Defendants' Instruction B, to which error is charged, reads as follows:

"The Court instructs the Jury that if you find and believe from the evidence that the defendants or either of them offered to turn a

farm over to H. M. Lueckenhoff, at that time administrator of the Gaume estate, in settlement of the note sued upon, you are not to regard or consider that as any admission of liability on the note if you find and believe such an offer was made as a compromise to settle the controversy about the note sued upon.''

Under the issues which we have above stated, Instruction B, we conclude, has no application for the reason if plaintiff meets the burden as outlined above, the language of the note itself imports consideration and the question of admission is out of the case. If, on the other hand, plaintiff has not met the burden, then admission, if so, effects no purpose.

Defendants' instruction C, complained of, reads as follows:

''The Court instructs the Jury that it devolves upon the plaintiff to prove by the preponderance, that is, the greater weight of the credible evidence, in the case, that the estate of Edward Gaume, deceased, obtained title to and has the exclusive title to the note sued upon, or to the proceeds of said note, and that it obtained title to said note for a valuable consideration in good faith before maturity date of said note, August 29, 1935, without any notice of any prior equities, interest or infirmities, if any, you find so existed, and unless you so find from the greater weight of the evidence, then your verdict must be for all of the defendants.''

We conclude, as to above instruction, that same is in error in that it presents issues of fact to the jury that do not come within the pleadings in that the question of ''good faith before maturity date without notice of any prior equities, interest or infirmities'' is not shown to have been placed in issue and no evidence appears on such issue for the jury to pass upon.

Based upon the showing of the record before us, we conclude that in event of a retrial an instruction submitting findings of truth of facts which plaintiff in the trial is shown to assume as necessary to prove and has, as we conclude, introduced testimony which if found to be true entitles plaintiff to a verdict together with instruction as to burden of proof, instruction as to jury right to determine the facts under the evidence, and as to being judges of credibility of witnesses, and an instruction on form of verdict would be ample under the facts as presented in the record before us.

We would here suggest that on retrial that plaintiff should include all the elements in the plaintiff's principal instruction that plaintiff deems necessary to prove.

As to defendants' plea of failure of consideration, we conclude that defendants have failed to support by evidence any such affirmative facts as can defeat a recovery on such affirmative defenses.

For reasons set forth, judgment is reversed and cause remanded.

All concur.

## On Motion for Rehearing.

Respondents, defendants below, have filed a motion for rehearing, urging a consideration of a late opinion by the Supreme Court (People Bank of Butler v. Allen, 125 S. W. (2d) 829) wherein the well-accepted rule to the effect that one cannot enter into a contract with himself, or with himself and others, even though he acts in different capacities.

The point was raised by respondents in the hearing had at the April Call, 1929, of this court and was discussed by us in connection with the opinion in Robertson v. Bank of Vandalia, 66 S. W. (2d) 193.

The Butler v. Allen case, *supra,* is best distinguished from the opinion, l. c. 829 and 830 as follows, to-wit:

"The bank directors, in meeting assembled, in passing the resolution authorizing the bank's bond made an order that the president and the cashier 'assign, set apart and maintain as security to the sureties on the bond (all members of the board) bills receivable belonging to said bank in a sum not less than $40,000 nor more than double the amount of the penalty of said bond, for the purpose of securing said bondsmen against loss by reason of their obligation on said bond; said president and cashier are further authorized and empowered, from time to time, to take up any of the bills receivable so put up as security and to substitute other bills receivable in place of any so taken up; all security so put up to be returned to the bank when said bondsmen are released from liability on said bond. Alva Deerwater is named as trustee to receive and hold said collateral security for the benefit of the sureties on said bond.'

"In the order of the county court designating the bank as depository it was further provided that the designated depository furnish a bond in proper form for the amount above stated, 'to be signed by not less than five owners of unencumbered real estate of value equal in amount to the bond, or more.'

"Only two of all the directors could meet this requirement when the bond was presented. The county court approved and accepted the same.

"Said notes were all taken out of the possession of the bank before the assets of the bank were turned over to the Commissioner of Finance and copies of them substituted in the bank's files. All the original notes so taken out were held and are now retained by the appellant.

"In all published statements of the condition of the affairs of said bank prior to the Commissioner of Finance's taking over of the bank, said assets were includes as assets of the bank."

It is fundamental that for a general rule of law to have application to any given case, the facts and circumstances of such case must come within the reason of the rule.

The case now being reviewed by this court is a suit on a promissory note. The execution of the note is not denied and the note upon its face evidences a valid and valuable consideration. In its inception, the note in issue was a plain contract between the respondents and the Peoples Bank of Chamois of which P. J. Paulsmeyer was cashier. The note is duly endorsed by said Paulsmeyer and is in possession of the executrix of the Gaume estate, and said estate claims to be owner of said note under the following state of facts, to-wit: After the death of P. J. Paulsmeyer, the note was found in the lock box of the Gaume estate in the defunct Peoples Bank. It is shown that the box was opened in the presence of Mr. Kiethly who was in charge of the assets of the bank for liquidation. Mr. Kiethly, after the box was opened, took charge of same and no other conclusion can be drawn but that he turned the note in question to Mrs. Paulsmeyer, and that same was turned over by her to the representative of the Gaume estate. It is conclusively shown that the note is not even listed as an asset of the bank. A court of review cannot indulge in inferences based upon inferences to reach its conclusions, but must base its conclusions upon showing in the record before the court. It is conclusive from the showing of the record in the case at bar that all parties, outside of the Gaume estate, that could possibly make claim of ownership of the note in question have made such disclaimer of ownership of the note as completely bars action by such parties.

The respondents herein either owe or do not owe the note in question. We cannot conceive of a situation of payor without a payee. If respondents owe the note they certainly owe it to some payee. So far as the evidence before us reveals, all payees except the Gaume estate are eliminated.

The principle enunciated in the Peoples Bank v. Allen, *supra,* case we conclude has no application to the situation as presented in the case at bar.

The motion for rehearing is overruled. All concur.